16862

YARBOROUGH v. BANKERS LIFE & CASUALTY CO.

(81 S. E. (2d) 359)

*Messrs. DuRant, Durant & Rogers,* of Manning, and *T. P. Taylor* and *Isadore S. Bernstein,* of Columbia, *for Appellant,*

*James Hugh McFaddin, Esq.,* of Manning, *for Respondent,*

April 15, 1954.

OXNER, Justice.

In each of the three causes of action stated in the complaint, it is alleged that the defendant fraudulently breached a contract of insurance made with plaintiff. After entering a general denial, the Company alleged that the three policies referred to in the complaint were cancelled by the plaintiff and that it had returned to him all unearned premiums. On the trial of the case, a nonsuit was granted as to the first cause of action, but refused as to the other two. The jury returned a verdict in favor of the plaintiff for $7.50 actual damages and $1,000.00 punitive damages. On this appeal, defendant contends (1) that there is no evidence of breach of contract; (2) that the evidence is insufficient to show that the breach, if any, was accompanied by a fraudulent act so as to permit the recovery of punitive damages; and (3) that the verdict was excessive and the result of passion and caprice.

The defendant offered no testimony. That of the plaintiff, which consisted largely of documentary evidence, disclosed the following:

On April 20, 1950, defendant issued to plaintiff three health and accident policies. The one involved in the first cause of action, which was nonsuited, called for a monthly premium of $8.35. The other two policies, styled "Family Group Surgical or Medical Expense Policy" and "Preferred Family Group Hospital Policy", provided for monthly premiums of $3.50 and $4.00, respectively. Each of these policies allowed a grace period of ten days for the payment

of premiums, during which time the insurance would continue in force. It was further provided: "This policy may be renewed only with the consent of the Company. The Company's acceptance of each renewal premium shall constitute its consent to renew."

After the issuance of the policies on April 20, 1950, it is conceded by the defendant that they were "renewed from month to month up to and including the 20th day of March 1951." During this period the wife of plaintiff, who was included as an assured, suffered an illness necessitating hospital treatment. She had varicose veins and an operation was performed. Her gallbladder was also x-rayed but no stones were found. A claim for this illness was paid. Shortly thereafter this controversy arose.

On February 26, 1951, which was within the grace period, plaintiff paid the premiums due February 20th. He requested a receipt, but none was given. The Company failed to send the usual notice of premiums due March 20th. In a letter written March 22nd, the Company acknowledged receipt of the "renewal premium of $7.50". (This necessarily referred to the February premiums on the two policies in controversy which the plaintiff paid on February 26th). The Company then entered into a lengthy discussion of the difficulty in fixing rates on health policies, stating that these were "newer forms of insurance" for which there was no experience table for rate making purposes comparable to that available in fixing rates on older forms of insurance, such as life and fire. After this somewhat irrelevant discourse, plaintiff was asked to sign and return a rider which was enclosed and was told that "in all other regards your policy will remain the same and the rider will serve as a make-shift adjustment." Finally, the letter concluded: "We consider this the only fair course of action we can take now, but if you do not agree, simply send us the policy with a request for refund within ten days from the date hereof, and we will refund the premium stated above."

The rider mentioned, which was to be attached to and form a part of the "Family Group Surgical or Medical Expense Policy" and to be effective as of February 20, 1951, provided that as to plaintiff's wife, the policy would not cover any thing of which "any affection of the gall bladder or biliary tract" was the sole or contributing cause.

The foregoing letter of March 22nd was answered by the plaintiff on March 26th. He expressed regret at the action taken by the Company, and stated: "Of course, we have never had any idea of dropping or discontinuing any of the policies." He further advised the Company: "I haven't received any premium notice for March so I did not know whether to send premium and as the result I haven't mailed them because I hate to spend good money for something I can't depend on. I appreciate the nice business in the past and would like to continue in future as in past so if for any reason we can not begin here and carry on as before will you please be so kind as to refund the last $15.85 payment."

After a long delay, the Company replied on May 10, 1951, as follows:

"In accordance with your request we are enclosing herewith our check for $15.85. This represents the full refund of all money tendered after February 20, 1951 on Casualty Policies No. 50133233, 50133234 and 50133235, issued to Luther Yarborough.

"All three policies are now terminated."

During the interval of approximately six weeks between the plaintiff's letter of March 26th and the Company's reply of May 10th, plaintiff paid the premiums on all three policies due March 20th, aggregating $15.85, and also the premiums due April 20th. Including the premiums due February 20th and paid on February 26th, plaintiff had actually paid since February 20th premiums aggregating $47.55. It follows that the statement of the Company in the letter of May 10th that $15.85 represented "the full refund of all money tendered after February 20th" was incorrect.

At this point in the controversy, plaintiff turned the matter over to his attorney, who on May 16th wrote the Company that he was holding the check for $15.85 pending the receipt of a further sum of $31.70 which should be refunded. On May 29th, the Company replied that a thorough check of its records showed that no premium payments were received "for premiums due after February 20, 1951", and as the insured had received full coverage to that date, "no refund may be made of such premiums." It was also stated that if the insured had receipts showing payments other than those mentioned, a further investigation would be made if such receipts were forwarded. The attorney for plaintiff replied on June 7th that he had receipts for the additional amount demanded but stated that since the Company "has lost the record of the payments for February, March and April", he deemed it inadvisable to send these receipts "for fear that you might also misplace them."

On June 8th the Company forwarded to plaintiff an additional check for $15.85. On June 12th, plaintiff's attorney demanded an additional sum of $15.85. In a letter to plaintiff's attorney on June 15th, the Company stated that they had no record of premium payments other than those previously refunded. On June 19, 1951, plaintiff's attorney again demanded the balance due of $15.85. There was never any reply by the Company. After waiting approximately one year and hearing nothing further from the Company, this action was commenced on July 2, 1952.

Before entering into a discussion of the questions involved on this appeal, it might be well to determine whether the Company has ever offered to refund all premiums due on the basis of its letter of March 22, 1951. It is undisputed that the total amount paid by plaintiff after February 20th was $47.55, representing premiums for February, March and April. Of this amount, the Company only offered to refund $31.70. On this appeal, it takes the position that there never was any liability on its part to refund the February premiums because the insured received protection

under the policies and the premium was earned for the month beginning February 20th. But this is wholly inconsistent with the position taken by the Company in the letters of March 22 and June 8, 1951. In the last mentioned letter it was expressly stated that the first check of $15.85 represented "a refund of one monthly premium in advance of February 20 on the above three policies." The jury's verdict of $7.50 actual damages evidently represents the $15.85 never refunded less $8.35 which was the monthly premium on the policy eliminated by the nonsuit of the trial Judge.

Does the evidence show a breach of contract by the Company? We think so. When the letter of March 22nd was written, the Company had received and accepted the premium for the month beginning February 20th, which continued the policies in force to March 20th. In addition to this, having given no notice of unwillingness to renew for the following month, under the express terms of the grace provisions, the policies continued in effect for an additional ten days, or to March 30th. The letter of March 22nd reasonably warrants the construction that the Company was terminating the policies as of February 20th unless the plaintiff agreed to attach the enclosed rider retroactive to that date. This it had no right to do. Thus there was a repudiation by the Company of its obligations both retroactively and prospectively.

It is also our view that the circumstances, unexplained as they are, warrant a resonable inference of fraudulent breach. It is reasonable to suppose that the Company became apprehensive of further claims for illness by plaintiff's wife resulting from gall bladder trouble. It refused to give a receipt for the February premium. The customary notice was not given of the premium due March 20th. It then sought to have plaintiff agree to the attachment of a rider excluding illnesses resulting "from any affection of the gall bladder or biliary tract" and make same retroactive to Feburary 20th, although the premium had already been accepted for that month. After the Company by the letter of March 22nd

wrongfully revoked the policies, the plaintiff elected by his letter of March 26th to treat the contracts as rescinded. He had a right to so elect. *Alexander v. Durham Life Insurance Co.,* 181 S. C. 331, 187 S. E. 425; *Robers v. Jefferson Standard Life Insurance Co.,* 182 S. C. 51, 188 S. E. 432. Plaintiff's letter of March 26th was ignored for an extended period, which left him in uncertainty as to what the Company intended to do. Out of precaution he decided to continue to pay his premiums, which were accepted in silence. Finally on May 10th, the Company forwarded a check for $15.85, representing that this amount constituted all money tendered after Feburary 20th on the three policies when, as a matter of fact, the sum of $47.55 had been paid since that date. The matter was then turned over to plaintiff's counsel who sought to obtain a refund of the balance. On June 8th, another check for $15.85 was sent but plaintiff's counsel was unsuccessful in his diligent efforts to get the Company to refund the remainder.

If considered separately, some of the foregoing acts may not evidence bad faith but all the circumstances, considered together, reasonably warrant an inference of breach of contract accompanied by fraudulent acts. It is well settled in this jurisdiction that where such is the case, punitive damages may be awarded.

Counsel for the Company strongly rely upon *Ray v. Pilgrim Health & Life Insurance Co.,* 206 S. C. 344, 34 S. E. (2d) 218, and *Banahan v. Metropolitan Life Insurance Co.,* 214 S. C. 403, 52 S. E. (2d) 809. In these cases it was held that the mere failure of an insurer to refund a premium or deposit on premium due to the insured does not give rise to the right to punitive damages. This unquestionably is true. Punitive damages are not recoverable for the mere failure or refusal to pay a debt. But the instant case presents a different situation. Here we have a breach of contract accompanied by fraudulent acts.

Finally, we are asked to set aside the verdict upon the grounds that it is excessive and based upon caprice, passion and prejudice. A motion for a new trial was made upon this ground, which was refused by the trial Judge. We cannot say that he abused his discretion.

Affirmed.

STUKES and TAYLOR, JJ., and MARTIN, Acting Associate Justice, concur.

. BAKER, C. J., not participating.