17597

Annie Belle BLACKMON, Respondent, v. UNITED INSURANCE COMPANY, Appellant

(111 S. E. (2d) 552)

*Messrs. Paulling & James,* of Darlington, *for Appellant,*

*Walker E. Anderson, Esq.,* of Hartsville, *for Respondent,*

*Messrs. Paulling & James,* of Darlington, *for Appellant, in Reply,*

December 17, 1959.

LEGGE, Justice.

On a former appeal, 233 S. C. 424, 105 S. E. (2d) 521, we affirmed a circuit court order construing the complaint in this action as stating a cause of action for fraudulent breach of a contract of life insurance accompanied by fraudulent act. Trial, at the December, 1958, term, before the Honorable James Hugh McFaddin, Presiding Judge, and a jury, resulted in a verdict for the plaintiff in the amount of two hundred ($200.00) dollars actual and five hundred ($500.00) dollars punitive damages. Appellant contends that the trial judge erred:

1. In submitting the issue of punitive damages to the jury;

2. In submitting the issue of actual damages to the jury; and

3. In permitting oral testimony for the plaintiff to the effect that after the death of the insured an agent of the defendant had stated to the beneficiary that upon surrender of the policy, the receipt book, and the proofs of death, she would be paid two hundred dollars.

Upon the written application of Chesley Blackmon, wherein he stated that he had been born on January 24, 1913, appellant issued, on February 2, 1953, its policy of insurance on his life. The weekly premium was seventy cents; the death benefit, two hundred dollars; the designated beneficiary, the insured's mother, Annie Belle Blackmon, respondent here.

The insured died on October 28, 1957. The proofs of death as furnished by the beneficiary to appellant consisted of:

(a) Claimant's certificate, signed by the beneficiary's mark and sworn to before a notary public on October 31,

1957. On this certificate the date of the insured's birth was left blank.

(b) Undertaker's certificate, stating among other things that the age of the insured as given on the burial permit was fifty-one.

(c) Physician's certificate, dated October 29, 1957, stating among other things that the date of the insured's birth was March 2, 1906, and his age at death fifty-one.

(d) Certified copy of Certificate of Death, upon which the date of the insured's birth was stated as March 2, 1906, and his age on last birthday fifty-one years.

It is undisputed that if the insured's true age was as shown on the proofs of death the amount of insurance that the premium stated in the policy (seventy cents weekly) would have purchased would have been $150.00; that on or about November 5, 1957, appellant issued and delivered to respondent its check for that amount less seventy cents premium arrears, or $149.30; and that respondent endorsed that check and retained it until November 14, 1957, when her attorney returned it to appellant with his letter advising that this action was being brought. With its answer, appellant tendered said amount in full settlement of its liability under the policy.

Millie Blackmon, Chesley's widow, testified: that she and her husband lived with his mother; that she (Millie) could neither read nor write; that she did not know her own age or that of her husband; and that she had never given information to anyone concerning her husband's age. She said that Chesley died on a Monday morning, and that later that day a Mr. Gainey, appellant's agent, came to collect the weekly premium; and that upon being informed of Chesley's death, he told her and Annie Belle to "get up the papers, receipts and everything" and that he would come back in a day or two and pick them up; and that he did return on the following Thursday and "picked them up". Over objection of appellant's counsel, she testified that on that Thursday,

when Mr. Gainey came to get the papers, she heard Annie Belle Blackmon say to him: "When I give you them, you sure you going to bring me the two hundred dollars back?" And that Mr. Gainey replied: "That's what the policy calls for." She further testified that two days later he came back and brought a check for a hundred and forty-odd dollars. Also, that she saw him late the following Monday evening and told him that if he would give back the receipt book and other papers she would send him back the check; and that he had declined this proposal, saying that the payment that had been made was all that the policy called for.

Annie Belle Blackmon, who is illiterate, testified, over objection of appellant's counsel, that when Mr. Gainey came for the papers he "just told me to give him the papers and the book and he'd come back Saturday morning or Friday morning and he'd bring me my two hundred dollars."

Over like objection, Mozelle Blackmon Jacobs, one of the children of Chesley and Millie, testified that on said occasion Mr. Gainey "told grandma to get her policy and papers ready and he would take them back with him and he would bring her two hundred dollars."

The foregoing is, in substance, the testimony for the plaintiff. Proof of fraudulent intent accompanied by a fraudulent act was necessary to support the verdict for punitive damages. In our opinion the testimony here affords no basis for such verdict.

Section 37-161 of the 1952 Code, which limits to a period of two years after the issuance of a policy of life insurance the time within which an insurance company may dispute the truth of the application, proceeds as follows: "But when the age of the person insured * * * has been misstated the company may at any time adjust any amount payable or benefit accruing under the policy to such as the premiums would have purchased at the true age * * * of such insured." Section 37-147 forbids discrimination by

an insurance company in favor of any individual insured of the same class and risk, whether such discrimination be with regard to the amount of premium charged or the amount of benefits payable. These statutory provisions are binding upon the insurer, the insured, and the beneficiary. Under them the appellant in the case at bar had the right, if the age of the insured had been misstated in his application, to adjust the amount of the benefit to that which the weekly premium would have purchased at his true age; and it was forbidden to pay more.

The object of the proofs of death was to furnish appellant with the particulars of the loss and with the data necessary for the determination of its liability and the amount thereof. *Wade v. Metropolitan Life Insurance Co.,* 179 S. C. 70, 183 S. E. 589. Of course the beneficiary has the right to correct any mistake that has been made in such proofs. If in the instant case the date of the insured's birth was erroneously stated in the proofs, no effort to correct such error appears to have been made. Neither the undertaker nor the physician was called to testify. Appellant was entitled to act upon the proofs as submitted by the beneficiary. Cf. *Hartin v. Sovereign Camp, W. O. W.,* 124 S. C. 397, 117 S. E. 409; *Mutual Benefit Life Insurance Co. v. Newton,* 22 Wall. 32, 22 L. Ed. 793.

Fraud is provable by circumstantial evidence, *Cook v. Metropolitan Life Insurance Co.,* 186 S. C. 77, 194 S. E. 636; but it is never presumed, and evidence of it must be clear, cogent and convincing. *Smith v. Traxler,* 224 S. C. 290, 78 S. E. (2d) 630; *Singleton v. Mullins Lumber Co.,* 234 S. C. 330, 108 S. E. (2d) 414. We find nothing in the evidence here from which bad faith on the part of appellant might reasonably be inferred.

The testimony upon which respondent relies has been referred to above. Its inadequacy to support her cause of action is apparent, and especially so with respect to the conversation claimed to have been had with appellant's agent when he called to pick up the proofs of

death; for it is to be noted from the testimony of the three witnesses, Millie Blackmon, Mozelle Jacobs and the respondent herself, that at the time when the agent is said to have told respondent that she would be paid $200.00 he had not yet received the proofs of death. Nor can fraud or bad faith be inferred, in the circumstances of this case, from the agent's refusal of Millie's proposal that if the company would give back the receipt book and other papers she would return its check. Appellant had tendered payment, as it had the legal right to do, in reliance upon the proofs of death as submitted to it by the respondent. It was within its legal rights in standing upon the settlement so made. Fraud is not to be implied when one acts within his legal rights. *Mishoe v. General Motors Acceptance Corporation*, 234 S. C. 182, 107 S. E. (2d) 43.

Respondent's case, though founded upon alleged fraud, does not wholly fail because of the lack of evidence from which fraud may reasonably be inferred; for appellant admitted liability under the policy in the amount of $149.30. Whether its liability was for that amount or for the face of the policy, $200.00, depended upon whether the insured's true age was as stated in the proofs of death or as stated in the application. That issue, being one of fact, was for the jury. There was some evidence warranting the conclusion that the date of the insured's birth shown on the proofs of death was erroneous, and that respondent, illiterate and ignorant of her son's true age, was not responsible for the error and was therefore not estopped to rely upon the date shown on the application. We have not overlooked the fact that Mozelle, one of the children of Chesley and Millie, testified that she had been born in 1930 and that Chesley and Millie had had a child, Sara Belle, who was two years older than Mozelle; and that under this testimony, if Chesley had been born in January, 1913, as stated in his application, he would have been fifteen years old when his daughter Sara Belle was born. But it was for the jury to say how much or how little credence was to be given this testimony.

Appellant contends that admission of the testimony as to the agent's statement to the beneficiary that upon surrender of the policy, the receipt book and the proofs of death she would be paid $200.00, was erroneous, in that: (a) such testimony was an attempt, by parol, to vary the terms of the written contract of insurance; and (b) the agent was without authority to make such a statement. Respondent argues that this testimony was admissible in explanation of the transaction and also because of the allegation of fraud, whereby much latitude is allowed in the admission of evidence of circumstances from which fraud may be inferred.

We need not determine here whether, in view of the statutory prohibition (Code, Section 37-147) against discrimination among insureds and beneficiaries, appellant's agent could by parol have bound appellant to pay more to the respondent than would have been payable to the beneficiary of a like policy on the life of an insured of the same age and class of risk. The statement claimed to have been made by the agent here could not, in our opinion, have had the effect that appellant suggests. In the first place, as we have before stated, it was not susceptible of the inference of fraud. In the second, it did not tend to vary the terms of the policy, for when he made it, if in fact he did make it, the agent had not received the proofs of death and, so far as the evidence reveals, had no reason to believe that the insured's age had been misstated in the application.

The judgment is affirmed as to actual damages and reversed as to punitive damages.

Affirmed in part and reversed in part.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.