## 18179

Tessie J. CORLEY, Respondent, v. COASTAL STATES LIFE INSURANCE COMPANY, Appellant

(135 S. E. (2d) 316)

*Messrs. Lumpkin, Kemmerlin & Medlock,* of Columbia, for *Appellant,*

*Messrs. Seigler & Seigler,* of Columbia, *for Respondent,*

March 10, 1964.

TAYLOR, Chief Justice.

In this action Respondent, Tessie J. Corley, alleges that Appellant, Coastal States Life Insurance Company, breached an insurance contract and that such breach was accomplished with a fraudulent intention accompanied by fraudulent acts. The Insurance Company denied that it had breached the contract and denied any fraudulent act or intent on its part. The Appellant paid into Court the sum of $7,296.75 together with $60.00 interest, the amount it claimed due Respondent under the terms of the life policy. The jury returned a verdict in favor of Respondent of $144.65 actual damages and $10,000.00 punitive damages in addition to the verdict of $7,356.75 actual damages directed in favor of Respondent by the trial Judge.

At appropriate stages of the trial, the Insurance Company made motions, which were denied, for nonsuit and for directed verdict as to actual damages on the grounds that there was no additional amount due Respondent as actual damages and that there was no evidence of an act of fraud or of fraudulent intent on the part of the Insurance Company. After the jury's verdict, the Insurance Company also moved for judgment n. o. v. or alternatively for a new trial, which the Court also denied.

The policy in question was issued October 27, 1950, on the life of Respondent's husband, naming Respondent as beneficiary. The insured died July 1, 1961, while the policy was in force. The face value of the policy was for $5,000.00 and provided for two additional death benefits, the first of which was denominated Bonus Participation Fund and the other death benefit provided for a full return of premium. $925.50 had been contributed to the Bonus Participation Fund and credited to the policy. $825.75 had previously been paid the insured, leaving a balance of $96.75 in the fund due as an additional death benefit. The return of premium rider provided "* * * the Company will add to the death benefits otherwise payable an amount sufficient to give a full return of premium on the policy and this rider, ($200.00 per annum) * * *". The above quoted portion of the policy is ambiguous when considered with the fact that the policy on the first page thereof indicates that the annual premium is $213.15. Premiums had been paid on the policy for 11 years. Appellant contends that the annual basic premium for the face amount of the policy is $185.10 and that amount together with the $14.90 premium for the return of premium rider, a total of $200.00, is all that was intended to be returned. Under this construction, the Waiver of Premium for Disability in the amount of $3.15 and the Double Indemnity premium of $10.00 were not included. Although Appellant's contention is reasonable, it is not the only reasonable construction to be placed on the language used and the jury's verdict of $144.65 additional

actual damages (a return of $13.15 for 11 years) has not been questioned as to its accuracy by the exceptions.

The Insurance Company's motions for nonsuit, directed verdict, judgment n. o. v. and alternatively for a new trial in regard to punitive damages were based on the contention that there was no evidence of fraudulent intent or of an act of fraud on its part which would warrant the recovery of punitive damages.

■ It is well settled that in an action for breach of an insurance contract, proof of fraudulent intent accompanied by a fraudulent act is necessary to support a verdict for punitive damages. *Blackmon v. United Insurance Co.*, 235 S. C. 335, 111 S. E. (2d) 552.

In response to a request for proof of loss forms, Respondent was advised by the Insurance Company by letter dated July 6, 1961, to its manager in Columbia, S. C., that the total amount payable was $5,096.80. Respondent conferred with a Mr. Foster, a friend of the family in the insurance business; and he, in an effort to determine the correct amount payable, contacted the South Carolina Insurance Commission. On July 19, 1961, Mr. A. H. Ninestein, Chief Investigator for the South Carolina Insurance Commission, received a letter of the same date from Ben W. Lacy, Assistant Secretary of the Insurance Company, to the effect that the total amount payable was $7,296.75. Relying upon this information, Respondent forwarded to the Insurance Company her copy of the policy. Rather than receiving the amount quoted to the South Carolina Insurance Commission, Respondent received a letter through the Insurance Company's local agent, signed by Jack Weldon, another assistant secretary of the Company, dated August 3, 1961, stating that $6,371.25 was the correct amount due and that the previous quotations were incorrect. At this point, Respondent turned the matter over to her attorneys, who returned the proffered check with a request for correction. By letter dated August 28, 1961, another check in the amount of $6,371.25 was received correcting

a typographical error in Respondent's name, and reiterating that such amount constituted its full settlement provided for by the policy. This action was thereafter commenced on August 29, 1961.

The Insurance Company offered some explanation for the discrepancy in the amounts quoted and for their action in the above matter contending that it made a mistake while acting in good faith. The reasons given for the asserted mistakes are that very few policies of this particular type had been issued by the Company and that as the policy provided for several different benefits, one of which had to be calculated against another to arrive at a final entitlement, the erroneous settlement offer was arrived at through mistaken calculations of Mr. Weldon. However, Mr. Weldon testified that the decision arrived at by him as to the amount due Respondent was a "deliberate decision" on his part.

"Liability in tort exists for false statements made without actual knowledge of falsity, but in such a manner or under such circumstances that knowledge of falsity is imputed to the representor. If one asserts that a thing is true within his personal knowledge, or makes a statement as of his own knowledge, or makes such an absolute, unqualified, and positive statement as implies knowledge on his part, when in fact he has no knowledge as to whether his assertion is true or false and his statement proves to be false, he is as culpable as if he had willfully asserted that to be true which he absolutely knew to be false and is equally guilty of fraud. False statements which are made recklessly, without knowing or caring whether they are true or false, will support an action of deceit. * * *" 23 Am. Jur., Fraud and Deceit, Section 128, 1. 921. See *Aaron v. Hampton Motors, Inc.,* 240 S. C. 26, 124 S. E. (2d) 585; and *Gary v. Jordan,* 236 S. C. 144, 113 S. E. (2d) 730.

As stated in *Yarborough v. Bankers Life & Casualty Co.,* 225 S. C. 236, 81 S. E. (2d) 359: "If considered

separately, some of the foregoing acts may not evidence bad faith but all the circumstances, considered together, reasonably warrant an inference of breach of contract accompanied by fraudulent acts. * * *"

The conduct of the Insurance Company in attempting to settle Respondent's claim for a sum substantially less than the amount quoted to the South Carolina Insurance Commission as owing under the policy (an amount it was in a position to know was incorrect) is evidence from which fraud can be legally inferred and is sufficient to require the trial Judge to submit the issue of fraud to the jury.

Appellant also asks that the verdict for punitive damages be set aside on the grounds it was so excessive as to shock the Court or necessarily the result of passion, prejudice and caprice, the actual damages being $7,501.43, with interest, as compared to $10,000.00 punitive damages. The motion for a new trial was made upon these grounds and refused by the trial Judge's Order of October 6, 1962, and we cannot say that he abused his discretion.

Affirmed.

Moss, Lewis, Bussey and Brailsford, JJ., concur.