Charles **DAWKINS**, Plaintiff,

v.

**NATIONAL LIBERTY LIFE INSUR-
ANCE COMPANY, Defendant.**

**Civ. A. No. 66-82.**

United States District Court
D. South Carolina,
Columbia Division.

April 6, 1966.

Dallas D. Ball and Luther M. Lee, Columbia, S. C., for plaintiff.

Roger B. Jones, of McKay, McKay, Black & Walker, Columbia, S. C., for defendant.

HEMPHILL, District Judge.

Charles Dawkins, invoking diversity jurisdiction of the court, filed complaint against the National Liberty Life Insurance Company, an unauthorized insurer doing business in South Carolina, seeking judgment for damages in amount of $500,000 actual and punitive damages.

Defendant, admitting that the company is doing business within the state and is unauthorized to do so, moves to strike from the complaint allegations pertaining to punitive damages and prayer thereof, and if such be granted, moves to dismiss on the grounds that it is determinable to a legal certainty that the

amount in controversy is less than the jurisdictional amount required in the United States Courts in diversity actions.[1]

Now plaintiff moves for an order requiring defendant to file bond in accordance with Section 37–268 of the South Carolina Code before proceeding further.

Section 37–265 of the South Carolina Code of 1962 provides for substituted service on unauthorized insurers as follows:

The issuance and delivery of a policy of insurance or contract of insurance or indemnity to any person in this State or the collection of a premium thereon by any insurer not licensed in this State, as herein required, shall irrevocably constitute the Commissioner and his successors in office the true and lawful attorney in fact upon whom service of any and all processes, pleadings, actions or suits arising out of such policy or contract in behalf of such insured may be made.

In Ross v. American Income Life Ins. Co., 232 S.C. 433, 102 S.E.2d 743 (1958), it was held that actions ex contractu, such as breach of contract accompanied by a fraudulent act could be brought under this section, and that, while some ex delicto actions might possibly "arise under the policy," an action for fraud and deceit in inducing one to take out a policy was not such an action as could be brought under the section. The theory of fraud and deceit as a claim by its nature denies the existence of a valid contract. As expressed by the court in *Ross*:

This is not an action arising out of the insurance policy. It is one in which the insured elects to treat the policy as void and seeks to recover damages for fraud and deceit in inducing him to purchase it. The measure of damages is not based upon the benefits named in the policy but upon the premiums paid.

The fact that in this case service was accomplished on the Insurance Commissioner serves to dispel any doubt that plaintiff is not basing his claim on fraud and deceit. The action is ex contractu and under section 37–268 of the South Carolina Code of 1962 plaintiff would be entitled to the filing of bond by the defendant as a prerequisite of pleading.

Defendant's position is that the court had no authority to order the filing of bond because the damages recoverable are less than $10,000 and the court is without jurisdiction. If the court has no jurisdiction it cannot order a bond and it has no authority to entertain further pleading.

The question of jurisdiction must be determined. The court therefore considers defendant's motions vis-a-vis the complaint.

The motion to strike is grounded in defendant's contention that under the laws of South Carolina, which are controlling, the complaint states no claim sufficient to support an award of punitive damages.

The facts as alleged are to the effect that the defendant is a foreign insurance company, unauthorized, but doing business in South Carolina. The company had allegedly been advertising extensively in South Carolina and plaintiff, allegedly relying on the company's advertising that they would be prompt and fair in paying claims, purchased a policy of health and accident insurance by mail. Plaintiff says that on November 23, 1965 he was rendered totally disabled as a result of an accident. He submits that he tendered notice in compliance with the policy terms, and subsequently he received a number of forms which he and his doctor duly accomplished and submitted. Then, he continues, he began to receive an intermittent but relentless flow of forms and papers requesting more information, and requiring far more enthusiasm in pressing his claim than was required by the terms of the policy.

This allegedly "fraudulent" conduct continued, according to the complaint, for

1. 28 U.S.C. § 1332.

over two months at which point plaintiff was notified his claim for benefits was denied.

Plaintiff's complaint here alleges that defendant's "fraudulent breach of said contract, accompanied by the wilful and wanton fraudulent and scheming intentions, actions and conduct * * *" directly and proximately caused plaintiff to be terribly worried, annoyed, cheated, deceived, imposed upon, humiliated, vexed, and harassed as well as being deprived of his rights to benefits, under the policy. Policy benefits claimed to be due and owing are in amount $600. The prayer demands judgment of $500,-000.

The issue here is to determine if the complaint places in controversy an amount in excess of $10,000.

For expediency the court considers defendant's motions in inverse order. If the contention that any actual damages recoverable will be limited to the amount due under the policy, the jurisdictional amount will therefore be dependent upon the validity of the claim for punitive damages.

■ Generally the damages to which one is entitled for breach of contract are those which arise naturally from the breach, or those which may reasonably be supposed within the contemplation of parties.[2] The question of whether mental suffering is a proper element of damages in contract is treated at 5 Corbin, Contracts, Section 1076. Mental suffering is not itself a pecuniary harm, the normal resultant damage flowing from breach of a commercial contract. Those cases which have allowed recovery for mental suffering appear to be limited to cases where such suffering accompanies a bodily injury flowing from a breach of contract under circumstances which could practically be regarded as a

tort, and those cases where the suffering was caused intentionally or wantonly or recklessly. That is, in the first instance, these contracts which contemplate performance directly affecting the human body, and in the latter, those contracts which are of a character such that a breach would necessarily cause such suffering, as in contracts to marry, or the delivery of death messages.[3] In almost all of these cases the contracts were of such nature that the injured party could have elected to bring an action in tort, and in no case involving a contract merely for the payment of money have such damages been recoverable.[4]

As Professor Corbin wryly, and accurately observed: "The breach of a contract practically always causes mental vexation and feelings of disappointment in the plaintiff; but he seldom thinks of asking for a money payment therefor."

In another context, but an even stronger one, the South Carolina Courts have refused personal injuries as a compensable element in an action for the breach of a landlord's express contract to make repairs.[5]

■ If the complaint is intended to state a claim for a breach of contract accompanied by a fraudulent act, then the action remains one ex contractu[6] although with its own certain and unique overtones of tort. However damages for mental suffering are too remote and consequential to be reasonably supposed to be within the contemplation of the parties to the contract of insurance. They do not flow naturally and directly from the breach of the contract. Nor does it appear that such damages, nor even physical sickness, would flow as the natural, proximate, and foreseeable consequence of the fraudulent element alone. The claim for actual damages in this in-

2. 25 C.J.S. Damages § 24(a) (1966); Hiers v. South Carolina Power Co., 198 S.C. 280, 17 S.E.2d 698 (1941).

3. See generally 5 Corbin, Contracts § 1076 (1964) and cases cited therein.

4. Id. at 429, 430 n. 7.

5. Timmons v. Williams Wood Products Corp., 164 S.C. 361, 162 S.E. 329 (1932).

6. Ross v. American Income Life Insurance Company, 232 S.C. 433, 102 S.E.2d 743 (1958).

stance must, therefore, be limited to the payment of amounts due and owing within the coverage of the policy. Jurisdiction of this court then turns on the question of punitive damages.

■ Under the doctrine of Welborn v. Dixon, 70 S.C. 108, 49 S.E. 232 (1904), the courts of South Carolina have held that in order for a breach of contract to entitle one to punitive damages the breach must be with fraudulent intent and accompanied by a fraudulent act.[7] Mere failure or refusal to pay money, for whatever motive, is not a basis for an award of punitive damages without the requisite fraudulent act.[8]

■ The determination that a complaint does not state a cause of action for punitive damages may properly be made on motion.[9]

■ While the complaint here reveals a pattern of behavior on the part of the defendant which would be reprehensible if true, there are no allegations properly setting forth a fraudulent act accompanying the breach of contract which would support punitive damages.

The resulting question is similar to that faced in Sadler v. Pennsylvania Refining Co.[10] regarding removal jurisdiction:

In determining from the face of a pleading whether the amount really in dispute is sufficient to confer jurisdiction upon this court, it is settled that if from the nature of the case as stated in the pleadings there could not legally be a judgment for an amount necessary to the jurisdiction, jurisdiction cannot attach even though the damages be laid in the complaint at a larger sum. Vance v. W. A. Vandercook Co., 170 U.S. 468, 18 S.Ct. 645, 42 L.Ed. 1111. * * *[11]

Even in an instance where punitive damages were claimed for fraud and deceit in inducing purchase of an insurance contract, where it was convincingly apparent that no verdict approaching the jurisdictional amount could be allowed to stand, the case was remanded for lack of jurisdiction.[12]

■ In the present case, the amount recoverable being thus limited to the actual damages sustained within the scope of the policy, this court is without jurisdiction. Therefore, plaintiff's motion for an order requiring the filing of bond is hereby denied.

The complaint is dismissed, and without prejudice, in order that plaintiff may seek relief in the proper forum. This court cannot allow amendment[13] as it lacks jurisdiction to proceed.

And it is so ordered.

7. E. g., Corley v. Coastal States Life Ins. Co., 244 S.C. 1, 135 S.E.2d 316 (1964); Blackmon v. United Ins. Co., 235 S.C. 335, 111 S.E.2d 552 (1959) (former appeal construing complaint 233 S.C. 424, 105 S.E.2d 521 (1958)); Williams v. Metropolitan Life Ins. Co., 173 S.C. 448, 176 S.E. 340 (1934).

8. Id. See also Patterson v. Capitol Life & Health Ins. Co., 228 S.C. 297, 89 S.E. 2d 723 (1955); Yarborough v. Bankers Life & Cas. Co., 225 S.C. 236, 81 S.E.2d 359 (1954); Hall v. General Exchange Ins. Co., 169 S.C. 384, 169 S.E. 78 (1933).

9. Patterson v. Capitol Life & Health Ins. Co., 228 S.C. 297, 89 S.E.2d 723 (1955).

10. 31 F.Supp. 1 (D.C.S.C.1940).

11. Id. at 2. Cf. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938); F. & S. Construction Co., v. Jenson, 337 F.2d 160 (10th Cir. 1964).

12. Anthony v. United Ins. Co. of America, 240 F.Supp. 95 (E.D.S.C.1965).

13. Fed.R.Civ.Proc. 15.