## 17401

WALTER H. ROSS, Respondent, v. AMERICAN INCOME LIFE INSURANCE COMPANY, a Corporation, Appellant, v. WALTER H. ROSS, Respondent, v. AMERICAN STANDARD INSURANCE CORPORATION *ET AL.,* Appellants.

(102 S. E. (2d) 743)

*Messrs. Haynsworth, Perry, Bryant, Marion & Johnstone,* of Greenville, *for Appellants,*

*Jesse M. Ray,* Esq., of Greenville, *for Respondent,*

March 13, 1958.

OXNER, Justice.

By agreement of counsel, these two actions were consolidated on appeal. One is to recover damages for fraudulent breach of an insurance contract and the other to recover damages for fraud and deceit in inducing plaintiff to enter into a contract of insurance. Defendants appeared especially for the purpose of challenging the jurisdiction of the Court

and moved in each case to vacate and set aside the service of the summons. The trial Judge held that the Court acquired jurisdiction of the defendants *in personam* and refused to set aside the service. The defendants have appealed from this order.

Appellants are Indiana corporations. Neither has been licensed to do business in South Carolina. Neither maintains any office, has any agent or owns any property in this State. In September, 1948, respondent, a resident of South Carolina, applied by mail to appellant American Standard Insurance Corporation for an accident and health insurance policy. The application was duly accepted in Indiana and on October 14, 1948, the policy was mailed to respondent and received by him at Greenville, South Carolina. The annual premium of $264.00 was regularly mailed to the American Standard Insurance Corporation until January, 1955, when respondent was notified that the American Income Life Insurance Company had entered into a reinsurance agreement with the American Standard Insurance Corporation under which all outstanding policies of the American Standard were reinsured by American Income. Respondent duly received and accepted a reinsurance certificate from American Income and thereafter paid all premiums by mail to that Company. Respondent claims that the insurer wrongfully cancelled said policy on May 14, 1956.

Service of the summons and complaint in each action was had upon the Insurance Commissioner in accordance with the terms of the South Carolina Uniform Unauthorized Insurers Act, Title 37, Chapter 3, Article 8 of the 1952 Code, the pertinent portion of which is as follows (Section 37-265):

"The issuance and delivery of a policy of insurance or contract of insurance or indemnity to any person in this State or the collection of a premium thereon by any insurer not licensed in this State, as herein required, shall irrevocably constitute the Commissioner and his successors in office the true and lawful attorney in fact upon whom service of

any and all processes, pleadings, actions or suits arising out of such policy or contract in behalf of such insured may be made."

It seems to be conceded that the summons and complaint in each case were promptly forwarded by the Insurance Commissioner to appellants and that they were given ample opportunity to appear and defend. They contend that this statute constitutes a denial of due process guaranteed by the Fourteenth Amendment, particularly if construed as applicable to the inssuance and delivery of a single policy, and further that if the statute is valid, substituted service may not be had under it in tort actions.

In recent years there has been a tremendous growth in mail order insurance business. Many companies doing business in this manner maintain an office and own property only in the state where they are incorporated but insure risks on a nationwide basis. Frequently they have no agents or solicitors. New business is secured by advertisement and solicitation by mail. The hardship of requiring an assured or his beneficiary to hire a lawyer to prosecute small claims in a state far from the residence of the policy holder soon became evident. In order to provide the policy holder with a means of enforcing his rights without having to suffer the inconvenience and costs, oftentimes prohibitive, of suing in a foreign jurisdiction, a number of states have enacted statutes similar, in all material respects, to the one under consideration.

The early tendency of the courts was to invalidate substituted service under these statutes. But the great weight of current authority is in the other direction. Annotation, 44 A. L. R. (2d) 416; Note 39 Va. L. Rev. 966 (1953). The question was recently finally settled in *McGee v. International Life Insurance Co.*, 355 U. S. 220, 78 S. Ct. 199, 201, 2 L. Ed. (2d) 223. The Court there upheld a judgment obtained in California by service of process upon a foreign insurance company by registered mail under California's Uniform Unauthorized Insurers Act, West's Ann. Insurance

Code, §§ 1610-1620. The suit was by the beneficiary of a policy purchased by a California resident from an Arizona Insurance Company. Later the obligations of this Company were assumed by the defendant insurance company. Neither company ever had any agents in California or did any business there apart from the policy involved in the action. After reviewing past cases, the Court said:

"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.

"Turning to this case we think it apparent that the Due Process Clause did not preclude the California court from entering a judgment binding on respondent. It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State. * * * The contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died. It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable. When claims were small or moderate individual claimants frequently could not afford the cost of bringing an action in a foreign forum—thus in effect making the company judgment proof. Often the crucial witnesses—as

here on the company's defense of suicide—will be found in the insured's locality. Of course there may be inconvenience to the insurer if it is held amenable to suit in California where it had this contract but certainly nothing which amounts to a denial of due process."

It is of interest to note that as far back as 1946, Judge Timmerman, in a well considered opinion in *Storey v. United Insurance Company,* D. C., 64 F. Supp. 896, sustained service of process on the Insurance Commissioner under our statute.

In *Sanders v. Columbian Protective Association of Binghampton,* N. Y., 208 S. C. 152, 37 S. E. (2d) 533, we held that our statute did not justify service of process upon a foreign insurance company having no agents or property here where the application was made by a non-resident of South Carolina and the policy was issued and received by assured in another State. The facts in the instant case present a different situation.

It is argued in no event can service be sustained under this statute where the contact with a resident of this State consists solely of the issuance and delivery by mail of a single insurance policy. The record in the instant case is silent as to whether appellants issued other policies to residents of this State. However, we do not think it was necessary for respondent to show other transactions. The view urged by appellants has been taken by some Courts, Annotation, 44 A. L. R. (2d), page 430, but we think the better reasoned cases sustain a contrary conclusion. As pointed out in *Zacharakis v. Bunker Hill Mutual Ins. Co.,* 281 App. Div. 487, 120 N. Y. S. (2d) 418, 423, motion for leave to appeal granted 281 App. Div. 1019, 121 N. Y. S. (2d) 271, "quantity could not alone be the test of validity of a statute of this kind." In *International Shoe Company v. State of Washington,* 326 U. S. 310, 66 S. Ct. 154, 159, 161 A. L. R. 1057, the Court said: "It is evident that the criteria by which we mark the boundary line between those activities which justify the subjec-

tion of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less." In *McGee v. International Life Insurance Co., supra,* the record showed no more than the delivery of a single insurance contract.

The final contention of appellants is that actions *ex delicto* are without the terms and scope of the statute. They say that any action under it must be one solely for the recovery of benefits under an insurance contract. Our attention is called to Section 37-268 of the 1952 Code which provides that before an unauthorized insurer may file any pleading in an action instituted against it, such insurer must either file a bond with surety, in an amount to be fixed by the court, sufficient to secure the payment of any judgment rendered, or procure a certificate of authority to transact the business of insurance in this State. It is argued that if the statute be construed as applying to actions *ex delicto* a plaintiff could, in effect, prohibit an unauthorized insurer from filing a pleading by demanding an excessive amount of damages.

Only one complaint is contained in the record. We are, therefore, unable to determine the exact differences between the two causes of action. Apparently from the agreed statement, one is for breach of an insurance policy accompanied by fraudulent acts and the other is for fraud and deceit in inducing respondent to purchase the said insurance policy. The question of whether under these circumstances respondent could be required to elect is not presented.

At the outset it may be stated that appellants are in error in stating that a cause of action for fraudulent breach of a contract is one *ex delicto*. Such an action is regarded under our decisions as *ex contractu. Broome v. Travelers Insurance Co.,* 183 S. C. 413, 191 S. E. 220; *Cain v. United Insurance Co.,* S. C., 102 S. E. (2d) 360.

And we think it is clear that a cause of action for fraudulent breach of a policy is within the scope of our act authorizing service upon the Insurance Commissioner in "actions or suits arising out of such policy or contract." Section 37-265. Nor do we think the fact that in such action plaintiff may recover punitive damages precludes bringing an action under this statute. In *Schutt v. Commercial Travelers Mutual Accident Association,* 2 Cir., 229 F. (2d) 158, 160, involving substituted service on a foreign insurance company under a statute similiar to ours, the judgment included, in accordance with Tennessee law, "additional costs and expenses in the sum of $2,500.00 arising directly out of defendant's refusal in bad faith to pay its obligation under said policy." We think all that is necessary is that the action be one arising out of the contract of insurance.

As to the claimed burdensome effect of Section 37-268 in suits to recover amounts in excess of the benefits under the policy, it will be noted that instead of giving bond the insurer may procure a certificate of authority to transact insurance business in this State.

A more difficult question is presented with reference to the cause of action for fraud and deceit in inducing respondent to purchase the insurance policy. This is not an action arising out of the insurance policy. It is one in which the insured elects to treat the policy as void and seeks to recover damages for fraud and deceit in inducing him to purchase it. The measure of damages is not based upon the benefits named in the policy but upon the premiums paid.

*Hodge v. Reserve Life Insurance Co.,* 229 S. C. 326, 92 S. E. (2d) 849, tends to sustain the foregoing conclusion. It was an action to recover damages for alleged fraud and deceit in inducing plaintiff to take out policies of surgical and hospital insurance. The question involved was whether this cause of action came within Section 10-307 of the Code which permits an action against an insurance company to be brought "in the county where the loss occurs." The lower court concluded that while the action was one in tort

for fraud and deceit, the alleged damages arose out of claimed representations by the insurer's agent as to coverage under the policies and that, therefore, the alleged damages constituted a "loss" within the statute. We reversed and held that the phrase "where the loss occurs" contemplated loss from a casualty insured against under the terms of the policy. Also, see *National Life Co. v. Stegall,* 140 Tex. 554, 169 S. W. (2d) 155, which was cited with approval in the *Hodge case.*

While there may be actions *ex delicto* arising out of a policy of insurance, that of fraud and deceit in inducing respondent to take out the policy is not of such character.

It follows that the Court below was correct in refusing to vacate the service in the action for fraudulent breach of contract but was in error in denying the motion in the action for fraud and deceit.

The order appealed from is modified accordingly.

STUKES, C. J., and TAYLOR, LEGGE and MOSS,, JJ., concur.