Joseph M. SHEALY, Jr., Appellee,

v.

CHALLENGER MANUFACTURING
COMPANY, Inc., Appellant.

No. 8510.

United States Court of Appeals
Fourth Circuit.

Argued April 2, 1962.

Decided May 19, 1962.

B. D. Hayes and Nolen L. Brunson, Rock Hill, S. C. (Hayes & Hayes, Rock Hill, S. C., on brief), for appellant.

Vernon E. Sumwalt, Rock Hill, S. C. (Charles B. Ridley; Ridley & Simrill, and Roddey & Sumwalt, Rock Hill, S. C., on brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and J. SPENCER BELL, Circuit Judges.

HAYNSWORTH, Circuit Judge.

Contending it was not amenable to substituted service of process in South Carolina, the defendant in this tort action sought its dismissal. Its motion was denied, the District Court being of the opinion the Tennessee corporation was "doing business" in South Carolina.[1] We allowed an interlocutory appeal under the provisions of 28 U.S.C.A. § 1292 (b). After full consideration, however, we conclude that the order of the District Court was manifestly correct.

The defendant is a Tennessee manufacturer of disappearing or folding stairways of the sort frequently installed in residences to provide access to attic areas. It maintains no place of business in South Carolina, but it sells and delivers its product in quantity to Ross Builders Supplies, Inc. for resale in that state. Ross is a wholesaler or dealer in supplies for the building trades. Its principal office is in Greenville, South Carolina, but it maintains branch offices and sales establishments in a number of other South Carolina cities, including Rock Hill.

Upon an order received by mail or telephone from Ross, the defendant would ship a quantity of its disappearing stairs to the designated Ross branch. Some of these shipments were in trucks owned and operated by the defendant. Deliveries of shipments of the defendant's stairs to the Rock Hill branch of Ross occurred approximately monthly. During 1960 and 1961 these deliveries were invariably made by employees of the defendant using trucks owned by the defendant.

The record shows that each of the Ross branch offices received deliveries of the defendant's stairs. The frequency of such deliveries, except at Rock Hill, is not disclosed. The defendant's president stated in an affidavit, however, that large orders were frequently delivered directly by its employees driving its equipment, while smaller orders were usually shipped by common carrier.

The plaintiff alleges personal injury caused by a defect in one of the stairways manufactured by the defendant. The stairway had been purchased from Ross at Rock Hill by a building contractor for installation in a new residence under construction for the plaintiff.

There is no substantial constitutional question. The defendant's regular and frequent operation of its trucks in South Carolina for the purpose of effecting there local deliveries of its products to its customers clearly provided those "minimum contacts" without which the "due process" clause of the Fourteenth Amendment would prevent state exercise of jurisdiction over a foreign corporation.[2] The cause of action arose out of the use in South Carolina of one of the defendant's stairways. It had been purchased in South Carolina from one to whom the defendant had sold and

1. Shealy v. Challenger Manufacturing Company, D.C.,W.D.S.C., 198 F.Supp. 151.

2. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.

delivered it for resale in that state. The plaintiff lives in South Carolina. Resident there are the witnesses which he must offer to prove the nature and extent of his injury, the source of the stairway, the circumstances of the accident and the defect to which he claims it was attributable. Surely, it will be no more unfair to this defendant to require it to defend this action in South Carolina than it would be to the plaintiff to require him to prosecute the action in Tennessee, the defendant's home.

Since the record discloses that the defendant had substantial contacts with the state of the forum, the cause of action arose there and maintenance of the action there "does not offend traditional notions of fair play and substantial justice," the defendant's "due process" contention is foreclosed by the Supreme Court's decision in International Shoe.

Without elucidation of its bearing upon the question, the defendant points to the fact that the record does not show regular or continual solicitation by the defendant in South Carolina of new orders for acceptance by it in Tennessee. The orders, it says, came without substantial solicitation in South Carolina.

■■ Solicitation in one state of orders for acceptance in another, contemplating interstate shipments of goods, is within the protection of the commerce clause of the Federal Constitution. That fact was once thought to bear heavily upon the constitutionality of an exercise of jurisdiction by the state in which the solicitation was conducted.[3] It led to controversy whether such solicitation in the state of the forum, alone, was enough to satisfy the constitutional prerequisites of an assertion of jurisdiction.

■■ It had not been thought, however, that such solicitation was a *sine qua non* of jurisdictional power. If the defendant, like the maker of the better mousetrap, is fortunate enough to get the business without active solicitation, it does not gain immunity from an exercise of jurisdiction by those states in which it engages in substantial activity of a different sort.[4] A foreign corporation, busily present in a state effecting direct deliveries of its wares to its customers, cannot escape the jurisdiction of the state upon the ground its orders were unsolicited. A seller's distribution of his wares may be a substantial activity whether the precedent contracts were solicited by the buyers or by the seller.

The defendant earnestly contends, however, that South Carolina's interpretation of her service of process statute is more restrictive than the constitutional limitations upon her power. "Transacting business," within the meaning of South Carolina's service of process statutes,[5] the defendant says, requires considerably more activity within the state than the minimum contacts requirement of due process.

■ We, of course, are bound by South Carolina's interpretation of her service of process statutes.

■■ We also accept the principle that a restrictive state interpretation of her statutes should not be disregarded, though we may think it was influenced by supposed constitutional limitations, which, after the Supreme Court's decision in International Shoe, we know to be inapplicable.[6] The principle, however, has largely lost applicability to this situation. The decision of the Supreme Court in International Shoe came down

---

3. See Green v. Chicago, Burlington & Quincy Railway Co., 205 U.S. 530, 27 S. Ct. 595, 51 L.Ed. 916; cf. International Harvester Co. of America v. Commonwealth of Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479; International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; Westcott-Alexander, Incorporated v. Dailey, 4 Cir., 264 F.2d 853.

4. See Boney v. Trans-State Dredging Co., 237 S.C. 54, 115 S.E.2d 508, in which there appeared to have been no local solicitation of business for the dredge.

5. Code of Laws of South Carolina, 1952, §§ 12–722, 10–424.

6. Pulson v. American Rolling Mill Company, 1 Cir., 170 F.2d 193; Bomze v. Nardis Sportswear, Inc., 2 Cir., 165 F.2d 33;

more than sixteen years ago. Since then, the law has moved on in the state courts as it has in the federal. In the process, the more recent decisions illuminate the old. When the state courts, themselves, march along with the evolving constitutional doctrine born so inauspiciously with Bank of Augusta v. Earle,[7] greatly enlarged with Lafayette Insurance Co. v. French,[8] and still further expanded in International Shoe Co. v. State of Washington,[9] a state court's more recent excursion in the direction of its newly revealed horizon may foreclose a slavish acceptance as controlling of an earlier decision, though factually closely analogous. When a state's interpretation of her service of process statute has already moved forward in keeping with the relaxation of earlier declarations of constitutional restraint upon her power, there is no longer a place for hesitancy to assume that it will.

In considering South Carolina's interpretation of her service of process statutes, we lay aside decisions defining her power to tax or regulate foreign corporations. It is true that her domestication statute and some of her taxing statutes predicate applicability upon the transaction of business within the state in language quite similar to that employed in the service of process statutes. It is also true that in an earlier day it may have been thought that such statutes were conterminous and that South Carolina's Supreme Court has relied upon cases arising under one of these related statutes when the question for decision arose under another.[10]

Later, however, the Supreme Court of South Carolina, clearly recognized the disparity in the reach of these related statutes. After first holding that Ford Motor Company was doing business in South Carolina within the meaning of her service of process statute,[11] it was held that the same company was subject to service but was not doing business in that state within the meaning of the requirements of her domestication statutes.[12] Relying heavily upon Liquid Veneer Corporation v. Smuckler,[13] the Supreme Court of South Carolina plainly announced that her interpretation of the service of process statute was influenced only by consideration of the requirements of the Fourteenth Amendment to the Federal Constitution, while its interpretation of South Carolina's regulatory and taxing statutes was influenced by additional considerations, particularly, the restrictions of the commerce clause of the Federal Constitution.

The contrasting decisions in the Ford Motor Company cases provide emphatic demonstration that the same or similar language is given a broad construction by South Carolina when the question arises in terms of the jurisdiction of her courts, but is restrictively construed when the question is the extent of the authority of South Carolina officials to assess taxes or impose penalties.

Partin v. Michaels Art Bronze Company, 3 Cir., 202 F.2d 541; Westcott-Alexander, Incorporated v. Dailey, 4 Cir., 264 F.2d 853; Rosenthal v. Frankfort Distillers Corporation, 5 Cir., 193 F.2d 137; Canvas Fabricators Inc. v. William E. Hopper & Sons, 7 Cir., 199 F.2d 485; Roberts v. Evans Case Company, 7 Cir., 218 F.2d 893; Steinway v. Majestic Amusement Company, 10 Cir., 179 F.2d 681.

7. 38 U.S. (13 Pet.) 519, 10 L.Ed. 274.

8. 59 U.S. (18 How.) 404, 15 L.Ed. 451.

9. 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.

10. See Zeigler v. Puritan Mills, 188 S.C.

367, 199 S.E. 420, and Douglas v. Frigidaire Sales Corporation, 173 S.C. 66, 174 S.E. 906, service of process cases in which the court cited, and apparently relied upon, respectively, Jewel Tea Co. v. City of Camden, 171 S.C. 353, 172 S.E. 307, and State v. W. T. Rawleigh Company, 172 S.C. 415, 174 S.E. 385, in which the city sought to tax and the state to impose penalties for failure to domesticate.

11. Thompson v. Ford Motor Company, 200 S.C. 393, 21 S.E.2d 34.

12. State v. Ford Motor Company, 208 S.C. 379, 38 S.E.2d 242.

13. 9 Cir., 90 F.2d 196.

Turning to decisions construing South Carolina's service of process statutes, we find later cases which strip from the defendant all of the comfort it finds in the earlier ones.

In 1938, South Carolina's Supreme Court held a foreign corporate vendor's direct deliveries of its goods in South Carolina was not enough to give South Carolina courts jurisdiction of a local cause of action against the vendor.[14]

In 1946, however, very shortly after the decision of the United States Supreme Court in International Shoe Company v. State of Washington, South Carolina approvingly endorsed the new vista opened to her. In holding that Ford Motor Company's activity in South Carolina was "amply sufficient" to satisfy the jurisdictional requirements, but insufficient to subject it to taxation or regulation, the Supreme Court of South Carolina said of International Shoe, " * * it goes far to clarify the prior uncertain precedents and establish a guide for the lower federal courts and the state tribunals to follow."[15] It applied the test of fairness and indicated that, with some exceptions, whatever the nature and extent of the activity of a foreign corporation within a state, if that activity gives rise to a local cause of action against it, the foreign corporation should be answerable for its wrong in the courts of that state.

One might contend that some retrogression from State v. Ford Motor Company is to be found in two cases decided in 1950 and 1951.[16] Any such contention would be completely deflated in the light of two, still later, cases decided in 1958 and 1960.[17]

In Ross v. American Income Life Insurance Company, substituted service upon the insurance company was sustained, though the only contact the defendant was shown to have had with South Carolina was the mailing of one insurance policy to a resident of that state. The general statutes with which we are concerned were not there involved, for service was had under a special statute applicable to insurance companies.[18] The result of the case, however, and the broad language of the opinion are inconsistent with a notion that South Carolina construes her service of process statutes narrowly and restrictively.

In Boney v. Trans-State Dredging Co., the South Carolina Supreme Court was concerned with the general service of process statutes under which the defendant here was served. In Boney, it appeared that the defendant was the owner of a dredge engaged in operations for the improvement of the Savannah River channel. The dredge was based in Georgia, but some of its work was on the South Carolina side of the state line. At the time of the accident, the dredge was being moved. The movement caused an underwater cable running from the dredge to the South Carolina shore to become suddenly taut, striking and upsetting a passing boat and injuring its occupants.

The trial judge held that the dredging company's activity in South Carolina was not the transaction of business in that state for jurisdictional purposes. The South Carolina Supreme Court reversed, saying:

"Recent decisions of both federal and state courts have tended to dis-

14. Zeigler v. Puritan Mills, 188 S.C. 367, 199 S.E. 421.

15. State v. Ford Motor Company, 208 S.C. 379, 38 S.E.2d 242, 249.

16. Industrial Equipment Co. v. Hough, 218 S.C. 169, 61 S.E.2d 884; Hoffman v. Landreth Seed Co., 220 S.C. 193, 66 S.E.2d 813.

17. Ross v. American Income Life Insurance Company, 232 S.C. 433, 102 S.E.2d 743; Boney v. Trans-State Dredging Co., 237 S.C. 54, 115 S.E.2d 508.

18. See McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, in which it was held that substituted service under a similar statute was not unconstitutional. And see Travelers Health Ass'n v. Commonwealth of Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154.

card older concepts whereby jurisdiction was accorded on the fictional premise of the corporation's implied consent or on the theory that the corporation is 'present' wherever its activities are carried on, and to substitute therefor, as the jurisdictional test, the requirement that the corporation have such contact with the state of the forum 'that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 158, 90 L.Ed. 95, 161 A.L.R. 1057; Travelers Health Association v. Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154; Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485; McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; State v. Ford Motor Co., supra; Ross v. American Income Life Ins. Co., 232 S.C. 433, 102 S.E.2d 743; Erlanger Mills v. Cohoes Fibre Mills, 4 Cir., 239 F.2d 502; Kilpatrick v. Texas & P. Ry. Co., 2 Cir., 166 F.2d 788; Smyth v. Twin State Improvement Corp., 116 Vt. 569, 80 A.2d 664, 25 A.L.R.2d 1193."

■ It is thus apparent that South Carolina now resolves the jurisdictional question in the terms employed in the opinion in International Shoe. In South Carolina, as in Virginia,[19] in North Carolina [20] and in most of the other states, there have been developments of such significance in the sixteen years since International Shoe was decided that earlier cases narrowly defining the jurisdiction of her courts are no longer of precedential value. The authority of Zeigler v. Puritan Mills expired with State v. Ford Motor Company. If there was any thought it had been, or would be resurrected, the thought should have perished with Boney v. Trans-State Dredging Co.

Our conclusion is emphasized by the fact that when South Carolina's Supreme Court in earlier cases found substantial activity in that state insufficient to support an assertion of jurisdiction over a foreign corporation, that court invariably declared that its conclusion was governed by federal authorities. Plainly, it then construed the reach of the statutes to be not less wide than the constitutional limitations as they were then understood. That court continues to rely upon decisions of courts of the United States, but now it finds in International Shoe and subsequent decisions authority for the exercise of a greatly expanded jurisdiction. In no case has that court held that the statutes did not authorize an exercise of jurisdiction which, in the opinion of that court, was constitutionally permissible. There have been a few caveats, such as that in Boney v. Trans-State Dredging Co., when the court reserved its opinion on the soundness of a Vermont decision [21] which held that a single act was sufficient contact with the state of the forum if the cause of action arose out of it. Such reservations have been expressed, however, in the course of discussion of the constitutional question and are unrelated to consideration of the meaning of the state's statutes.

■ We need not speculate whether, in a future day, South Carolina's statutes may be held not to authorize an assertion of jurisdiction which would be constitutionally permissible. As applied by the highest court of that state, the statutes approach, if they do not reach, ultimate constitutional bounds. Here, the defendant's activity in South Carolina was sufficiently substantial and regular that the case is far from the penumbra bordering the outer constitutional limits. It seems clear that South Carolina has

19. See Westcott-Alexander, Incorporated v. Dailey, 4 Cir., 264 F.2d 853.

20. See Harrington v. Croft Steel Products, 244 N.C. 675, 94 S.E.2d 803, a case which is closely analogous factually to this case.

21. Smyth v. Twin State Improvement Corp., 116 Vt. 569, 80 A.2d 664, 25 A.L.R. 2d 1193.

not given her statutes such a narrow construction that they do not authorize an assertion of jurisdiction here.

The objections to the jurisdiction of the court and to the substituted service of process were unfounded and were properly overruled.

Affirmed.