Gary G. HUGHES, as Temporary Administrator of the Estate of Johnny Gary Hughes, deceased, Plaintiff,

v.

KAISER JEEP CORPORATION and/or Kaiser Jeep Sales Corporation, Defendants.

Civ. A. No. 8647.

United States District Court
E. D. South Carolina,
Orangeburg Division.

Oct. 25, 1965.

558

Sol Blatt, Blatt & Fales, Barnwell, S. C., F. Hall Yarborough, Orangeburg, S. C., Thomas E. McCutchen, Whaley & McCutchen, Columbia, S. C., for plaintiff.

Charlton B. Horger, Horger & Horger, Orangeburg, S. C., for defendants.

SIMONS, District Judge.

This matter is before the court upon motion of defendants to quash the return of service of the summons and dismiss the action upon the grounds that: [a] Defendants are corporations organized under the laws of a State of the United States other than the State of South Carolina and are not subject to service of process within the jurisdiction of this court; and [b] Defendants have not been properly served with process in this action.

Action was commenced March 30, 1965 by the filing of summons and complaint in this court and subsequently served upon defendants by the following means: [a] Service by the Marshal of a copy of the summons and complaint upon "J. T. Whalen, Executive Assistant to the General Sales Manager of Kaiser Jeep Sales Corporation",[1] personally, at Columbia, South Carolina on March 30, 1965; [b] Service by the Marshal of a copy of the summons and complaint upon "J. M. Guthie, President of Superior Motors, a dealer for Kaiser Jeep",[2] personally, at Orangeburg, S. C. on April 13, 1965; and [c] Service upon "O. Frank Thornton, Secretary of the State of South Carolina",[3] personally, at Columbia, South Carolina on April 8, 1965.

Complaint asserts two causes of action, in the alternative, in favor of plaintiff, a resident of South Carolina, against the defendant foreign corporations for wrongful death of plaintiff's intestate, which allegedly resulted on or about April 23, 1963, while deceased was riding as a passenger in a Kaiser Jeep automobile, which had been purchased new by the City of Orangeburg, when the rear axle of said automobile suddenly broke causing the Jeep to overturn and fall upon plaintiff's intestate, resulting in his death. The first cause is alleged in tort; and the second is asserted in the alternative upon breach of an implied warranty in the manufacture and sale of said Jeep automobile.

Jurisdiction in this court is predicated upon diversity of citizenship and the amount in controversy, pursuant to Section 1332 of Title 28, U.S.C.A.

Defendants' motion to dismiss was heard by me August 23, 1965 on oral arguments by counsel for the parties, and the submission thereafter of written briefs and arguments. In addition to the complaint, the record in this case includes affidavits, interrogatories, answers thereto, and a specimen copy of the Kaiser Jeep Sales Corporation Direct Dealer Agreement, which said defendant has entered into with approximately seventeen franchised dealers in this State.

Where the court's jurisdiction has been duly challenged, as in this case, the burden is upon plaintiff to establish facts sufficient to vest the court with jurisdiction.[4]

1. See return of service of U. S. Marshal for Eastern District of South Carolina, filed March 31, 1965.

2. See return of service of U. S. Marshal for Eastern District of South Carolina, filed April 13, 1965.

3. See return of service of U. S. Marshal for Eastern District of South Carolina, filed April 9, 1965.

4. McNutt v. General Motors Acceptance Corporation, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; Industrial Electronics Corporation v. Cline, 330 F.2d 480 [3rd Cir. 1964].

■ In making such determination this court is bound by South Carolina's interpretation of her service of process statutes.[5]

The fundamental issue for determination is whether defendants were "doing business" in South Carolina at the time of the commencement of this action, so as to warrant this court in assuming and exercising jurisdiction over them.

From the record before me I find that defendant Kaiser Jeep Corporation is incorporated under the laws of the State of Nevada with its principal place of business in the State of Ohio, and that defendant Kaiser Jeep Sales Corporation is incorporated under the laws of the State of Michigan with its principal place of business in the State of Ohio. Neither corporation has been domesticated nor qualified to do business in this State; neither corporation has filed with the Secretary of State of South Carolina the designation of an agent to accept service of process.

Defendant Kaiser Jeep Sales Corporation has entered into direct dealer agreements[6] with approximately seventeen franchised dealers, which were in full force and effect at the time of the commencement of this action. Under the terms of its agreement with its South Carolina dealers, said defendant [herein designated as "company"] maintains the following controls and restrictions over its dealers:

■ Dealer is granted a definitely described and limited sales territory, wherein dealer "agrees to develop with diligence the sale of Company's products in said territories in accordance with this agreement".

■ Dealer agrees to sell only Jeep vehicles, and parts and accessories for the same.

■ The agreement further specifies the manner in which the dealers' orders will be placed with the company, the price and mode of payment to be made therefor. Company reserves the right to ship its products by any means of transportation or by any route that it so desires. Company also adopts as its exclusive warranty, the warranty "under which Kaiser Jeep Corporation sells motor vehicles," which said warranty is set forth in full in said agreement. Company also reserves the right, in order to promote sales, to make adjustments with purchasers not covered by the express warranty, and further agrees to reimburse dealer for its costs incurred in connection with its servicing of Jeep motor vehicles to the extent specified in bulletins issued to dealer. Company also reserves right to publish suggested list prices for any current models of Jeep motor vehicles, and to change such prices at will even after vehicles have been delivered to dealer.

■ Contract also covers in much detail advertising programs which are to be carried on by company, with the costs of some programs to be borne entirely by the company, and the costs of other programs to be borne by the dealer. Only one category of advertising will be done by the dealer for his own account, and the contract specifically provides that "dealer will, to the greatest extent possible, use advertising materials supplied or approved by the company and will avoid the use of material which does not conform to the policies of the company; dealer will discontinue immediately the use of any advertising material disapproved by the company."

■ Dealer agrees to the greatest extent possible to promote the sales of company's products in its terri-

---

5. Shealy v. Challenger Mfg. Co., 304 F.2d 102 [4th Cir. 1962].

6. See answer to interrogatories by defendant Kaiser Jeep Sales Corporation filed July 14, 1965, which has attached thereto as Exhibit "A" specimen copy of its "Direct Dealer Agreement".

tory; with requirements for the promotion of such sales set forth in some detail, requiring dealer to abide by the rules, regulations and policies of the company to maintain an adequate place of business, to display such signs as are approved by the company, to maintain the required stock of products, to maintain a retail sales organization, and to participate in sales and service training programs established by the company. Dealer must also maintain on hand such a supply of service parts and accessories as required by company.

■ Dealer also agrees to install and maintain an accounting system recommended or approved by the company, and keep such records as company requires. Dealer must also furnish to company by the tenth of each month a complete financial and operating statement. Dealer also agrees to furnish periodic and special reports as company may require and give it access at all reasonable times to the accounts and records of dealer. Contract also provides that company may determine and control the capital requirements imposed upon dealer, as determined to be adequate by company.

■ Dealer also agrees to satisfy owner, investigate and handle complaints of customers in order to protect the good will of company and dealer. He further agrees to employ qualified and competent personnel to adjust owner complaints, to buy special tools developed by company, to execute and deliver to each customer an owner's service policy on a form furnished by company.

■ Dealer is also required to comply with the general policies of company relating to sales, servicing and parts, and to furnish company such reports and records as it may require from time to time, including (a) ten-day reports of its inventory, (b) the number of unfilled retail orders on hand, (c) retail sales of new and used vehicles.

■ Contract also provides for its termination by company by written notice effective immediately upon the "happening" of certain listed events, including sale or transfer of any substantial interest in the dealership; abandonment or suspension of business for more than ten days by dealer; and the failure of dealer to comply with any of the terms of contract.

■ Contract also provides that company will repurchase from dealer all inventory on hand at the termination of contract, including undamaged special tools and mechanical shop equipment recommended by company.

It is noted that the contract between defendant Kaiser Jeep Sales Corporation and its franchised dealers appears to be quite similar to the dealer contract which Ford Motor Company had with its franchised dealer in the case of Thompson v. Ford Motor Company, 200 S.C. 393, 21 S.E.2d 34 [1942]; and the dealer contract between Beach Aircraft Corporation and Hawthorne Aero Sales, Inc., in Szantay v. Beech Aircraft Corp., 237 F.Supp. 393 [E.D.S.C.1965] aff'd 349 F.2d 60 [4th Cir. 1965]. It is further noted that in each of these cases the court determined that the manufacturer was "doing business" in South Carolina by virtue of its control over its franchised dealers therein.

It is quite obvious from the foregoing that under its agreements with its franchise dealers in South Carolina, defendant Kaiser Jeep Sales Corporation exercises such extensive control and supervision over its dealers in this State that the court has no hesitancy in finding that such is sufficient to constitute such dealers as agents of said defendant for service of process.[7]

7. Calhoun Mills v. Black Diamond Collieries, 112 S.C. 332, 99 S.E. 821 [1919]; McNeill v. Electric Storage Battery Company, 109 S.C. 326, 96 S.E. 134 [1918].

In addition to its franchised dealers acting under its direct dealer contracts, both defendants have substantiated by their answers to interrogatories, which are part of the record herein, that they have representatives coming into this State on a frequent and continual basis for purposes of conducting sales meetings, demonstrating vehicles, dealing with any sales problems, and other programs to promote business and sales. Representatives are also here to take orders, assist in service matters, and to call on potential fleet purchasers. The record before me is more than ample to determine that defendants have such substantial contact with South Carolina that holding them amenable to service of process to the courts of this State does "not offend traditional notions of fair play and substantial justice", in keeping with the teachings of International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 [1945].

The courts have consistently held that what constitutes "doing business" by a foreign corporation cannot be formulated in an all embracing rule since the solution to the question depends upon and is controlled by the facts of each particular case. Surely justice and fair play require that a State, which accords to a foreign corporation privileges and protection under its laws to carry on its business and earn a profit, may also exact reciprocal duties in return, regardless of how artfully such corporation may devise strategems intended to circumvent the rights of the State and its citizens. If defendants are to enjoy and profit from doing business through any licensed and franchised dealers in this State, over which it maintains rigid controls as has hereinabove been demonstrated, then in fairness and justice they should be amenable to the jurisdiction of the State's courts.

The old concepts of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, have given way to a great extent to the more modern concepts enunciated by the likes of International Shoe Company, supra. The modern criteria as to whether a foreign corporation is subject to a State Court's jurisdiction turn upon the premise as to whether or not its subjection to suit would "offend traditional notions of fair play and substantial justice". This modern concept has been fully adopted by the South Carolina Supreme Court. Boney v. Trans-State Dredging Company, 237 S.C. 54, 115 S.E.2d 508; Shealy v. Challenger Mfg. Co., 304 F.2d 102 [4th Cir. 1962]; Szantay v. Beech Aircraft Corp., supra.

The minimal requirements of due process as protected by the Fourteenth Amendment to the United States Constitution are adequately met by the facts and circumstances in this case. As was said by Judge Haynsworth in Shealy v. Challenger Mfg. Co., supra, at page 103:

"There is no substantial constitutional question. The defendant's regular and frequent operation of its trucks in South Carolina for the purpose of effecting there local deliveries of its products to its customers clearly provided those 'minimum contacts' without which the 'due process' clause of the Fourteenth Amendment would prevent state exercise of jurisdiction over a foreign corporation. The cause of action arose out of the use in South Carolina of one of the defendant's stairways. It had been purchased in South Carolina from one to whom the defendant had sold and delivered it for resale in that state. The plaintiff lives in South Carolina. Resident there are the witnesses which he must offer to prove the nature and extent of his injury, the source of the stairway, the circumstances of the accident and the defect to which he claims it was attributable. Surely, it will be no more unfair to this defendant to require it to defend this action in South Carolina than it would be to the plaintiff to require him to prosecute the action in Tennessee, the defendant's home.

"Since the record discloses that the defendant *had substantial contacts* with the state of the forum, the

cause of action arose there and maintenance of the action there 'does not offend traditional notions of fair play and substantial justice,' the defendant's 'due process' contention is foreclosed by the Supreme Court's decision in International Shoe." [Emphasis added.]

■ It is true that defendant Kaiser Jeep Sales Corporation, and not defendant Kaiser Jeep Corporation, has entered into the direct dealer contracts with its dealers in this State. However, it is apparent that the former is a subsidiary sales organization of the latter which was created and is owned for the purpose of promoting the distribution and sales of the latter's manufactured Jeep products. Their relationship is so inter-related and entwined each with the other, as shown by their answers to the interrogatories, as to justify the court in finding that the acts of one are the acts of the other. Ideal Theater v. Southern Enterprises, Inc., 132 S.C. 352, 128 S.E. 166 [1924]; Jones v. General Motors Corporation, 197 S.C. 129, 14 S.E.2d 628 [1941].

■ Having concluded that both defendants are "doing business" and have such contacts with South Carolina that they are subject to the jurisdiction of its courts and subject to its service of process statutes, I find both defendants have therefore been legally served with process by (a) service of summons and complaint upon the Secretary of State of South Carolina, in accordance with Section 10–424 of the 1962 South Carolina Code of Laws,[8] (b) by personal service within this State upon J. E. Whalen, Executive Assistant to the General Sales Manager of defendant Kaiser Jeep Corporation, (c) and by personal service within this State upon J. N. Guthie, President of Superior Motors, one of the franchised dealers in South Carolina of defendant Kaiser Jeep Sales Corporation, both individual personal services having been made under the authority of Section 10–423 of the 1962 South Carolina Code of Laws.[9]

Service of process upon both defendants under the South Carolina Statutes are provided for under Rule 4 [d] [7] of the Federal Rules of Civil Procedure.[10]

8. "§ *10–424. Service on foreign corporations generally.*—If the suit be against a foreign corporation other than a foreign insurance company the summons and any other legal paper may be served by delivering a copy to any officer, agent or employee of the corporation found at the place within this State designated by the stipulation or declaration filed by the corporation pursuant to § 12–721. But if such foreign corporation transacts business in this State without complying with that section such service may be made by leaving a copy of the paper with a fee of one dollar in the hands of the Secretary of State or in his office, and such service shall be deemed sufficient service and shall have like force and effect in all respects as service upon citizens of this State found within its limits if notice of such service and a copy of the paper served are forthwith sent by registered mail by the plaintiff to the defendant foreign corporation and the defendant's return receipt and the plaintiff's affidavit of compliance therewith are filed in the cause and submitted to the court from which such process or other paper issued.

"Such service may also be made by delivery of a copy thereof to any such corporation outside the State, and proof of such delivery may be made by the affidavit of the person delivering such copy. Such affidavit shall be filed in the cause and submitted to the court from which the process or other paper issued."

9. "§ *10–423. Same; qualification as to foreign corporations.*—Service can be made in respect to a foreign corporation under the provisions of § 10–421 only (a) when it has property within the State, (b) when the cause of action arose therein or (c) when such service shall be made in this State personally upon the president, cashier, treasurer, attorney, secretary *or any other agent thereof.*" [Emphasis added.]

10. "*(d) Summons: Personal Service.* The summons and complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. Service shall be made as follows: * * *

"(7) Upon a defendant of any class referred to in paragraph (1) or (3) of this

There is no contention here that all federal venue requirements are not satisfied.[11]

Based upon the foregoing findings, conclusions and authorities, defendants' motion to quash service of process must be denied.

And it is so ordered.

subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state."

11. It is interesting to note that § 1391 of Title 28 U.S.C.A. governing venue in United States District Courts was amended December 23, 1963 by adding a new subsection "f" which provides as follows: "A civil action on a tort claim arising out of the manufacture, assembly, repair, ownership, maintenance, use, or operation of an automobile may be brought in the judicial district wherein the act or omission complained of occurred."