Allison SIEGLING, Plaintiff,

v.

The **INTERNATIONAL ASSOCIATION OF APPROVED BASKETBALL OFFI-CIALS, INC.**, a Maryland Corporation, et al., Defendants.

Civ. A. No. 66–73.

United States District Court
D. South Carolina,
Charleston Division.

Dec. 29, 1966.

Howard R. Chapman, Warren A. Kohn, Charleston, S. C., for plaintiff.

Grimball & Cabaniss, Charleston, S. C., for defendants Frank Soden and The International Ass'n of Approved Basketball Officials, Inc.

### ORDER

SIMONS, District Judge.

Defendants, International Association of Approved Basketball Officials, Inc., (hereinafter referred to as the Association), Roger J. Sheridan, and Donald Lomme, have appeared specially to move to quash attempted service of process upon them and to dismiss, set aside and quash the service of the summons and complaint upon each of these defendants upon the ground that the service of the process upon them was insufficient, and that the court therefore lacks jurisdiction over them. An additional ground that the venue is improper was abandoned by these defendants. Plaintiff in his complaint sets up three alleged claims upon which relief is claimed:

1) That defendants conspired to illegally deprive the plaintiff from an association to which he was entitled to belong.

2) That defendants illegally expelled plaintiff from an organization to which he was entitled to belong.

3) That defendants breached its and their contract with the plaintiff, which breach was accompanied by a fraudulent act.

The facts alleged by the plaintiff giving rise to his claim can be stated briefly: On June 1, 1965 Roger J. Sheridan, president of the Association and a resident of Vermont, and defendant Donald Lomme, an executive committeeman of the Association and a resident of Connecticut, *inter alia,* acting individually and as agents and officers of the Association unlawfully conspiring in a preconceived plan, voted to expel, and did expel, plaintiff from the Association contrary to its rules, regulations, bylaws and constitution which deprived plaintiff of other benefits from his membership. Plaintiff asserts the jurisdiction of this court on the basis of diversity of citizenship and the requisite amount in controversy.

Plaintiff served the summons and complaint upon the Association by service upon the Secretary of State of South Carolina, pursuant to Section 10–424 [1] and Section 12–23.14 [2] of the 1962 South

1. § 10–424 provides in part: "If the suit be against a foreign corporation other than a foreign insurance company the summons and any other legal paper may be served by delivering a copy to any officer, agent or employee of the corporation found at the place within this State designated by the stipulation or declaration filed by the corporation pursuant to § 12–721. But if such foreign corporation transacts business in this State without complying with that section such service may be made by leaving a copy of the paper with a fee of one dollar in the hands of the Secretary of State or in his office, and such service shall be deemed sufficient service and shall have like force and effect in all respects as service upon citizens of this State found within its limits if notice of such service and a copy of the paper served are forthwith sent by registered mail by the plaintiff to the defendant foreign corporation and the defendant's return receipt and the plaintiff's affidavit of compliance therewith are filed in the cause and submitted to the court from which such process or other paper issued."

2. § 12–23.14 provides in part: "(a) Every foreign corporation which is not authorized to do business in this State shall, by doing in this State, either itself or through an agent, any business, including any business for which authority need not be obtained as provided by § 12–23.1, be deemed to have designated the Secretary of State as its agent upon whom process against it may be served in any action or proceeding arising out of or in connection with the doing of any business in this State.
"(b) Service of such process shall be made by delivering to and leaving with the Secretary of State, or with any person designated by him to receive such service, duplicate copies of such process, notice, or demand. The Secretary of State shall thereupon immediately cause one of such copies to be forwarded by registered mail, addressed to the cor-

Carolina Code of Laws, as amended. Such substituted service is provided for under Rule 4(d) (7) of the Federal Rules of Civil Procedure.

■ Plaintiff served the summons and complaint upon the defendants, Roger J. Sheridan and Donald Lomme, by the delivery of the pleadings to these defendants at Montpelier, Vermont and West Port, Connecticut, respectively. Rule 4(f) of the Federal Rules of Civil Procedure states the territorial limits of effective service. Service of process as to defendants Sheridan and Lomme is not in accordance therewith, so that this court under such circumstances cannot acquire personal jurisdiction of these defendants. Neither is there any manner prescribed by the law of South Carolina whereby the summons in an *in personam* action may be served upon the individual defendants outside of the State of South Carolina, pursuant to the provisions of Rule 4(d) (7) and 4(e) of the Federal Rules of Civil Procedure. See King v. Moore, 224 S.C. 400, 79 S.E.2d 460 (1954). Plaintiff has shown no other authority authorizing such service nor is the court aware of such. Therefore the service of process herein upon the individual defendants Sheridan and Lomme is ineffectual and must be quashed.

■■ Oral arguments by counsel for the parties were heard in Charleston, South Carolina, and written briefs were thereafter submitted. In addition the court has considered the various affidavits submitted by counsel for the parties, as well as correspondence between the defendant Association, its district or local boards and its individual members. The court has also been provided with an official handbook of the Association for the year 1965–66 which contains its Constitution and By-Laws. The sole question before the court for purposes of the motion to quash as to the Association is whether it is now, or at the time of the alleged wrongs upon which plaintiff's cause of action are based, was "doing

business" in South Carolina, so as to validate the substituted service of process made pursuant to State statutory provisions. The attempted service is valid if the court determines that defendant had the requisite "minimum contacts" with the State of South Carolina. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). There is no set formula by which "minimum contacts" may be weighed. Each case must be considered and judged on its own particular facts, and the material factor is the quality and nature of the corporate activity, rather than the mere quantity. Shealy v. Challenger Mfg. Co., 304 F.2d 102 (4th Cir. 1962). In this diversity suit, the court is bound by South Carolina's interpretation of her service of process statutes.

The International Association of Approved Basketball Officials has been in existence at least since 1931. The Association was chartered in Maryland in October of 1957 as a non-profit and a non-stock corporation. It was sometime during this period that it was known as the National Association of Approved Basketball Officials. Under Article II of its Constitution its purposes are proclaimed: (1) To promote the welfare of the game of basketball, its players, and officials; (2) To maintain the highest standard of basketball officiating; (3) To encourage the spirit of fair play and sportsmanship; (4) To have available at all times an adequate number of thoroughly trained and capable officials; and (5) To co-operate with all organizations officially connected with the game of basketball in furthering its interests and ideals. The Association in recent years has worked with the United States Department of State in cultural exchange programs involving the sending of United States basketball officials abroad for conducting teaching clinics, also for receiving foreign basketball officials in the United States, and holding officiating teaching clinics for such visiting foreign

poration, either at its registered office in the jurisdiction of its incorporation, its principal place of business in such

jurisdiction, or at the last address of such foreign corporation known to the plaintiff, in that order."

basketball referees. The only office maintained by the Association is at the home of the executive director, Steward C. Paxton, in Hagerstown, Maryland, who has been employed full time by the Association since March 1961. The Association has no office in South Carolina, nor any other State, nor is there any telephone listed in the name of the Association, the Association has no agent appointed for the service of process in South Carolina, nor in any other State except Maryland. Neither has it ever appointed an agent for service in South Carolina. The Association owns no property in South Carolina, nor in any other State except Maryland.

The only property owned by the Association consists of several items of office equipment located in the office at Hagerstown at the home of the executive director. The Association has never been licensed, nor applied for a license, to do business in any State other than Maryland. The purposes of the Association are promoted through subordinate organizations called "boards". Organized on a geographical basis the boards are either state, district or local. A local board obtains its charter from the National Association, and the membership of the local board is generally restricted to individuals living within a defined geographical area. Individuals may obtain membership in the Association by applying directly to it, or where a local board has been established, an individual must have obtained membership in a local board after he has passed an examination to show his knowledge and ability as a basketball referee plus such other investigation of his qualifications as the local board deems proper. The annual membership fee in the Association is $3.00. If a member has obtained his membership through a local board he pays to the local board whatever annual dues have been established by the local board, which then transmits to the Association $3.00 for each member. If an individual's membership is discontinued by the local board, he thereupon loses his membership in the Association.

From a study of the Association's Constitution and By-Laws as published in its 1965–66 Handbook it is quite clear that the Association has the authority to exercise broad and absolute control over its individual members and local boards in South Carolina. For example it must approve the constitution and by-laws of each local board; it also requires each local board to submit an audit and annual report each year to the Association; it has the power to designate the territorial areas of the local and district boards within the State; it spells out the duties and privileges of the boards, controls the dues they can charge its local members, and requires the boards to collect annual dues for the Association. It directs the minimum number of meetings the boards must have each year, and what must be done at these meetings.

The governing authority of the local boards are subject to the authority and jurisdiction of the Association and its Executive Committee. Individual members are required to wear the official uniform of the Association (which can only be purchased through its approved supplier with the Association receiving a royalty on each item purchased by its members). Individual members are also directed to attend a minimum number of board meetings each year. The Executive Committee of the Association is its governing body administratively and financially. (It is noted that plaintiff while residing in South Carolina was not only a member of this Committee, but also a member of several other important committees of the Association). The Association maintains rigid and broad controls over the discipline of its members, the conduct of elections and other activities of its boards, including the right to revoke the membership in the Association of its local or district boards, and the individual members. In short, the Association through its Constitution and By-Laws, as administered by its Executive Committee, exercises complete dominion and control over its local boards and individual members. It reaps substantial financial gains from dues and

assessments, and sales to its members in South Carolina.

At the time this suit was instituted, there were in South Carolina two local boards affiliated with the Association, one being located at the Parris Island Marine Base and the other in Orangeburg, South Carolina at the State Teacher's College. Prior to the institution of this litigation there had been a third local board in South Carolina affiliated with the Association. This was Local Board No. 151 located in Charleston.

The plaintiff, until his expulsion in April of 1965, was a member of the Association in Charleston for nineteen years. He has held local and national offices. Due to some internal complication within the organization plaintiff at the request of the Association resigned as Secretary-Treasurer of Local Board No. 151. Subsequent to plaintiff's resignation the Association ordered new elections for all elective officers [3] of the local board and ordered reinstatement of memberships to former members of the local board. The plaintiff and other individuals in Local Board No. 151 appealed this decision to the National organization and when refused sought and obtained an injunction in the County Court of Charleston enjoining this election. Subsequently, the defendant Association cancelled the individual memberships and charter of the Local Board No. 151. There is an Executive Committee of the Association and various committees such as interpretation of rules, audit, board relations, foreign relations, uniform, and constitution committees. As of the commencement of this litigation there were approximately 9,000 members of the Association and about fifty of these were residents of South Carolina.

The Association mails to its members a newsletter eight times a year. The only other publication by the Association is its annual handbook containing the basketball rules and the list of affiliated boards and individual memberships, together with the Association's constitution and by-laws. The Association corresponded with Local Board No. 151 as well as with all other local boards about three or four times a year. These letters were for notice of time and place of the Association's annual meeting, and occasional inquiries about matters pertaining to officiating technique. The Association solicits no advertising either in South Carolina or elsewhere. No clinics or other meetings of the Association have been held in South Carolina. The only occasions when members from other states would be in South Carolina were when they were invited by a college in South Carolina to officiate at one of its games, but the Association itself had nothing to do with making such arrangements. Defendant Association furnishes to the boards many items such as plaques, trophies, lapel pins, tie pins, and apparently from all such the Association receives a profit.[4] The Association strongly encourages wearing of the Association uniform, and it is only obtainable through an outlet approved by the Association. Other items such as trousers, shoes, whistles and other officials' equipment are available through the Association, from the sale of which the Association realizes a profit.

This court recently has had similar situations before it in reference to the doing of business by foreign corporations in this State which had not domesticated or qualified in South Carolina and who were served through the Sec-

---

3. The Association specifically ordered that plaintiff was not eligible for any elective office for a period of one year. See directive from Roger J. Sheridan, Association President to all members of Board No. 151, South Carolina received by plaintiff May 14, 1965. The contents of this directive are indicative of the authority and control of the local boards and members in South Carolina and else-

where which the Association exercises under its Constitution and By-Laws.

4. See the various exhibits attached to the plaintiff's brief which have not been contradicted by the Association, such as the Association's uniform committee report dated March 10, 1965 showing a profit from royalties of $1,117.00 from the Alumnae Athletic Equipment, Inc., for uniforms.

retary of State pursuant to Sections 10–424 and 12–23.14, supra. Hughes v. Kaiser Jeep Corp., 246 F.Supp. 557 (E.D.S.C.1965) and Bramlett v. Arthur Murray, Inc., 250 F.Supp. 1011 (D.S.C. 1966). In those two cases the court held that the defendants through their franchised dealer and licensee respectively were in fact present here and had such "minimum contacts" with this State that "traditional notions of fair play and substantial justice" were not violated by the exercise of the court's jurisdiction over them.

■ Thus, the controlling question in the instant case is whether the Association has such contacts with this State through its local boards and individual members that substituted service of process upon it through the South Carolina Secretary of State is sufficient to give this court jurisdiction. In Shealy v. Challenger Mfg. Co., supra, wherein the most recent interpretations of South Carolina's service of process statutes by the South Carolina Supreme Court were analyzed and summarized by the Fourth Circuit, it was concluded that South Carolina has given a broad construction to her service of process statutes when the question arises relative to the jurisdiction of its courts, and such statutes approach the ultimate constitutional bounds, as are limited only by the Fourteenth Amendment to the Constitution of the United States. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). It appears that the South Carolina Supreme Court has made it clear that the term "doing business" is one that it has in more recent decisions equated with such minimal contacts with the state that the maintenance of the suit "does not offend 'traditional notions of fair play and substantial justice'", and that whatever limitation it imposes is equivalent to that of the due process clause of the Fourteenth Amendment. Boney v. Trans-State Dredging Co., 237 S.C. 54, 115 S.E.2d 508 (1960); Ross v. American Income Life Insurance Company, 232 S.C. 433, 102 S.E.2d 743 (1958); Thompson v. Ford Motor Co., 200 S.C. 393, 21 S.E.2d 34 (1942); Szantay v. Beech Aircraft Corp., 237 F.Supp. 393 (D.C.S.C.1965), aff'd. 349 F.2d 60 (4th Cir. 1965).

■ The court is constrained to find from the particular facts and circumstances of this case that the Association for many years has profited financially and otherwise from its contacts with South Carolina through its local boards and numerous individual members. Its connections with this State have been such that the assumption of jurisdiction by this court, in the light of its interpretation of the most recent South Carolina Supreme Court decisions, supra, does not offend the traditional notions of fair play and substantial justice, and is consonant with the due process provisions of the Fourteenth Amendment.

The Ninth Circuit decision of Mechanical Contractors Association of America, Inc. v. Mechanical Contractors of Northern California, Inc., 342 F.2d 393 (1965) concerned a factual situation very similar to that of the instant case and which involved the California Service of Process Statute similar to that of South Carolina. The Ninth Circuit affirmed the local court's determination that substituted service of process upon the California Secretary of State was proper and that the court's assumption of jurisdiction of a foreign corporation, which had contacts with the State of California quite similar to the Association's contacts with South Carolina, was proper and did not violate due process.

In overruling the Association's motion to quash service of process, the court is making no intimation that the Association's actions were wrongful or that plaintiff has just grounds for relief against it, since those questions go to the merits of the case. The court only holds that the ends of justice require the Association which has such contacts with South Carolina to defend plaintiff's suit here, rather than to require a South Carolina plaintiff to go to Maryland to assert his claim.

Based upon the foregoing findings of fact and conclusions, the motions of the

individual defendants, Roger J. Sheridan and Donald Lomme to quash service of process upon them is granted, and the motion to quash of the defendant Association is denied.

And it is so ordered.