### Jack S. GRAYBILL, Plaintiff,

v.

### SIMS SADDLE AND LEATHER CO., Inc., Defendant.

### Civ. A. No. AC–1419.

United States District Court
E. D. South Carolina,
Columbia Division.

May 13, 1965.

McElveen & McElveen, Lowell Ross, Columbia, S. C., for plaintiff.

Turner, Padget, Graham & Laney, Columbia, S. C., for defendant.

SIMONS, District Judge.

This matter comes before the Court by way of a Motion by the Defendant to dismiss the Plaintiff's Complaint on the ground that the Defendant is not amenable to the jurisdiction of this Court.

The action is one for personal injuries sustained by the Plaintiff when he fell from a horse, allegedly caused by a defective saddle manufactured by the Defendant.

This action was originally instituted in the Court of Common Pleas for Richland County by the service of a Summons and Complaint upon the South Carolina Secretary of State as Statutory Agent for the Defendant as provided for by Section 12–23.14 South Carolina Code of Laws (1962). The Defendant removed the action to the United States District Court under the provisions of Sections 1441 et seq., Title 28 U.S.C.A.

Based upon the pleadings, the Answers to Interrogatories propounded by the Plaintiff and the Affidavits submitted by

both parties, the following facts are before the Court.

During the month of September, 1963, the Plaintiff approached W. Hughes Webb, d/b/a Webb Riding Academy, Hopkins, South Carolina about the purchase of four saddles; the said W. Hughes Webb recommended that Plaintiff purchase a Simco Saddle and showed to the Plaintiff, Defendant's catalog No. 101 which contained pictures and descriptions of the various saddles manufactured and sold by the Defendant. After looking at the various saddles shown in the catalog, Plaintiff selected three saddles including a saddle as described and shown on Page 38 of Defendant's catalog No. 101 which is sold under the name of "Challenger-Latigo" and described as Model No. 205 in said catalog. On or about the 10th day of October, 1963 the Agent, W. Hughes Webb, notified the Plaintiff that his saddles had arrived and on that date Plaintiff took delivery of two saddles but rejected one of the saddles because of a defective seat. Mr. Webb returned the saddle to the Defendant and several days later, the defective saddle or a substitute was returned to the Agent who notified the Plaintiff of its arrival; Plaintiff took delivery of this saddle sometime around the 15th day of October, 1963. On the 26th day of October, 1963, the Plaintiff was using the "Challenger-Latigo" saddle when the girth or tie strap broke, causing Plaintiff to fall off of the horse he was riding.

The catalog which Plaintiff used in making his selection of saddles is distributed in South Carolina and was furnished to the said Agent and 51 other Agents or persons in South Carolina in 1963. During 1963, Defendant made approximately 150 sales in South Carolina which amounted to $32,600.00. The Defendant takes orders from individuals in South Carolina, who orders from the catalog, and from retail stores.

The Defendant, a Tennessee Corporation, not domesticated in South Carolina, is engaged in the manufacture of saddle and leather goods with a 1963 volume of business of $2,700,000.00. In the past, the corporation has taken and filled orders for its products from persons in South Carolina. Some of the orders were received through manufacturer's representatives who traveled over the State taking orders from various persons. At the present time, the Defendant does not have a manufacturer's representative in South Carolina, however, it has had representatives in the past. The representative would generally spend two or three days a month in South Carolina, taking orders from various persons and agents and forward the order to the Corporation's office in Tennessee. During the month of October, 1963, the Defendant had a representative in South Carolina. The Defendant had a representative in South Carolina during the months of November and December, 1963, and during January, 1964, but has not had a representative in the State since that time, although it continues to receive and fill orders as it has done in the past.

The Defendant advertises in Western Horseman, a magazine of general circulation, which is distributed and sold in South Carolina.

Defendant argues that based upon the above facts, the Defendant was not doing business in South Carolina at the time the cause of action arose and is not subject to the jurisdiction of the Court.

█ The question of whether or not corporate activity within a state constitutes "doing business" by a foreign corporation so as to subject it to the jurisdiction of the Courts of that state must be resolved upon the facts of the particular case. Boney v. Trans-State Dredging Co. 237 S.C. 54, 115 S.E.2d 508 (1960).

█ The formula to be applied in determining whether the activity in question constitutes "doing business" is to determine whether the corporation had such minimum contact with the state that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. State of Washington, 326 U.

S. 310, 66 S.Ct. 154, 90 L.Ed. 95; Boney v. Trans-State Dredging Company, 237 S.C. 54, 115 S.E.2d 508; see also Shealy v. Challenger Manufacturing Company, (4th Cir. 1962) 304 F.2d 102.

In Shealy v. Challenger Manufacturing Co., supra, the Fourth Circuit Court of Appeals held:

" * * * As applied by the highest Court of that state (South Carolina) the statutes approach, if they do not reach, ultimate constitutional bounds. * * * " Page 107.

Here the Defendant's activity in South Carolina was clearly sufficient to meet the test as set forth by International Shoe Co. v. State of Washington, supra.

Defendant's Motion is overruled. The Defendant shall have twenty (20) days to file an Answer, and

It is so ordered.