James C. GARDNER, Jordan H. Parker, and Grover C. Cauthen, III, co-partners doing business as West Ashley Development Company, Plaintiffs,

v.

Q. H. S., INC., a corporation, and J. M. Fields, Inc., a corporation, Defendants.

Civ. A. No. 68–1088.

United States District Court
D. South Carolina,
Charleston Division.

Oct. 13, 1969.

Augustine T. Smythe, of Buist, Buist, Smythe & Smythe, Laurence O'H. Stoney, of Stoney & Stoney, Charleston, S. C., for plaintiffs.

Robert A. Patterson, of Barnwell, Whaley, Stevenson & Patterson, Coming B. Gibbs, Jr., Charleston, S. C., for defendants.

ORDER

HEMPHILL, District Judge.

This is a products liability case presently before the court upon the question of jurisdiction. Defendant, a non-resident of South Carolina, contends that it is not amenable to substituted service of process and thus not subject to the jurisdiction of the courts of South Carolina and of this court.[1] It moved to dis-

---

1. Rule 4(e) Federal Rules of Civil Procedure is as follows:

Whenever a statute of the United States or an order of court thereunder provides for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute or order, or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule. Whenever a statute

miss the action, or in lieu thereof, to quash the return of service of summons.

The jurisdictional facts are simple. The defendant Q. H. S., Inc., is a New York corporation which produces, in New York, a certain type plastic hair curler. Defendant maintains no office, no sales force or other personnel, and solicits no business, in South Carolina. All of its products which have been marketed in South Carolina were sold to J. M. Fields, Inc., a nationwide chain of retail stores. Approximately fifteen sets consisting of twelve rollers each have been distributed to four J. M. Fields, Inc., stores in South Carolina during the past five years; these goods were transferred in a single sale transaction; their value was less than $300. The sale to J. M. Fields, Inc., stores in South Carolina was made in New York, handled through a New York broker.

Plaintiffs are three North Carolina residents, doing business as a partnership which owns an apartment complex known as Woodmere Apartments in Charleston, S. C. In June of 1968 two young ladies, tenants of plaintiffs' apartments, purchased a set of defendant's hair rollers from the J. M. Fields, Inc., store in Charleston. Defendant's rollers are designed to be heated by being emerged in boiling water. During this process, the rollers allegedly caught fire and the apartment complex was damaged.

The only contact which defendant had with South Carolina was the presence within its boundaries of a number of defendant's products which defendant placed in interstate commerce in New York. The question before the court is whether South Carolina can exercise in personam jurisdiction over an absent non-resident defendant solely on the basis of alleged tortious injury caused by defendant's products within the territorial limits of the State.

Defendant was served pursuant to Section 12–23.14 [2] of the Code of Laws of South Carolina, 1962.[3] That section provides for service of process upon one "doing business" in South Carolina and the phrase, "doing business", is the key to the reach of the statute.

■ The problem presented by the effort at personal jurisdiction over an out-of-state, non-resident defendant is twofold. Initially, there must be a state statute or rule of law permitting personal jurisdiction over an absent defendant under the particular circumstances. Additionally, the statute must not violate the limits placed upon a state's jurisdictional power by the Due Process Clause of the United States Constitution. Stated alternatively, the Due Process limitations of the Constitution,

or rule of court of the state in which the district court is held provides (1) for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state, or (2) for service upon or notice to him to appear and respond or defend in an action by reason of the attachment or garnishment or similar seizure of his property located within the state, service may in either case be made under the circumstances in the manner prescribed in the statute or rule.

2. Section 12–23.14(a) of the Code of Laws of South Carolina, 1962, provides: Service of process on foreign corporation not authorized to do business in State.— Every foreign corporation which is not authorized to do busines in this State shall, by doing in this State, either itself or through an agent, any business, in-

cluding any business for which authority need not be obtained as provided by § 12–23.1, be deemed to have designated the Secretary of State as its agent upon whom process against it may be served in any action or proceeding arising out of or in connection with the doing of any business in this State.

3. Plaintiff also proceeds under Section 10.2–806, the long arm statute of the Uniform Commercial Code whether § 10.2–806 (U.C.C.) provides a basis for jurisdiction was not considered because, finding jurisdiction under § 12–23.14, consideration of the jurisdictional features of the former section became unnecessary. Moreover, the law under § 12–23.14 is well developed, while the South Carolina Supreme Court is yet to interpret § 10.2–806 (U.C.C.).

as interpreted by the Supreme Court, sets the outer limit to which a state's jurisdictional power may extend. The state's statute or rule of law may be restrictive or broad; it may or may not extend to the outer constitutional extremities. Determination of jurisdiction, therefore, is a two-step process. The court must first decide whether the statute covers the facts and then whether the statute exceeds the constitutional boundaries. Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); Bowman v. Curt G. Joa, Inc., 361 F.2d 706 (4th Cir. 1966); Lurie v. Rupe, 51 Ill.App.2d 164, 201 N.E.2d 158, cert. den'd. 380 U.S. 964, 85 S.Ct. 1108, 14 L.Ed.2d 154.

How far does the South Carolina statute reach? Earlier cases gave the statute in question, or its forerunner, a rather restrictive interpretation. As was pointed out by Judge Haynsworth in Shealy v. Challenger Manufacturing Co., 304 F.2d 102 (4th Cir. 1962), South Carolina's restrictive construction of its present Section 12–23.14 was probably influenced by the constitutional restraints of the past. Since the Supreme Court handed down its 1946 opinion in International Shoe v. State of Washington, infra, the constitutional limitations upon the reach of a state's personal jurisdiction over a non-resident defendant has been ever shifting, ever expanding. After the decision in *International Shoe,* the South Carolina Supreme Court evidenced its desire to move with the evolving constitutional doctrine. For an excellent review of the South Carolina cases and analysis of the trend see Shealy v. Challenger Manufacturing Co., supra. In the lattermost, the South Carolina Supreme Court announced in Boney v. Trans-State Dredging Co., 237 S.C. 54, 115 S.E.2d 508 (1960):

> No universal formula has been, or is likely to be, devised for determining what constitutes 'doing business' by a foreign corporation within a state in such sense as to subject it to the jurisdiction of the courts of that state. The question must be resolved upon the facts of the particular case. Jones v. General Motors Corporation, 197 S.C. 129, 14 S.E.2d 628; State v. Ford Motor Co., 208 S.C. 379, 38 S.E.2d 242.

Recent decisions of both federal and state courts have tended to discard older concepts whereby jurisdiction was accorded on the fictional premise of the corporation's implied consent or on the theory that the corporation is 'present' wherever its activities are carried on, and to substitute therefor, as the jurisdictional test, the requirement that the corporation have such contact with the state of the forum 'that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 158, 90 L.Ed. 95, 161 A.L.R. 1057; Travelers Health Association v. Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154; Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485; McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; State v. Ford Motor Co., supra; Ross v. American Income Life Ins. Co., 232 S.C. 433, 102 S.E.2d 743; Erlanger Mills v. Cohoes Fibre Mills, 4 Cir., 239 F.2d 502; Kilpatrick v. Texas & P. Ry. Co., 2 Cir., 166 F.2d 788; Smyth v. Twin State Improvement Corp., 116 Vt. 569, 80 A.2d 664, 25 A.L.R.2d 1193.

Thus, the term "doing business" is one that the South Carolina Supreme Court has equated with whatever limitations are imposed by the Due Process Clause of the Fourteenth Amendment. Accordingly, the South Carolina statute has been interpreted so that it now comprehends the entire jurisdiction allowable under the Fourteenth Amendment. Thus the questions of whether the jurisdictional reach of the statute covers these facts merges with the questioned constitutionality of such an extension of jurisdiction. Seigling v. International Ass'n of Approved Basketball Officials, 262 F.Supp. 441 (D.S.C.1966); Middle-

brooks v. Curtis Publishing Co., 264 F. Supp. 373 (D.S.C.1967); Graybill v. Sims Saddle & Leather Co., 241 F.Supp. 432 (E.D.S.C.1965); Carolina Boat & Plastics Co. v. Glascoat Distributors, 249 S.C. 49, 152 S.E.2d 352 (1967).

The constitutional question posed is whether South Carolina may, consistently with due process, exercise jurisdiction over an absent, non-resident defendant on the basis of tortious injury caused by one of its products located within the state. Three important Supreme Court cases establish the applicable principles. The landmark case in this area is International Shoe Co. v. State of Washington, supra, decided in 1945 in which the court abandoned "doing business" and "presence" as the standards for a state's jurisdictional power, and announced that due process required only that a foreign corporation or other non-resident have "certain minimal contacts" with the state asserting jurisdiction that maintenance of the suit does not "offend traditional notions of fair play and substantial justice." The second leading case in the evolution of the new jurisdictional doctrine was McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). In *McGee*, under the "minimal contacts" test, the court sustained California's exercise of jurisdiction over a foreign insurance company on the basis of a single insurance policy sold to a California resident. In reaching its decision, the court reasoned:

> Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other non-residents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.

> Turning to this case we think it apparent that the Due Process Clause did not preclude the California court from entering a judgment binding on respondent. It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State. Cf. Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091; Henry L. Doherty & Co. v. Goodman, 294 U.S. 623, 55 S.Ct. 553, 79 L.Ed. 1097.

The *McGee* case has come to stand for the proposition that a "single act" or isolated transaction is sufficient contact to sustain the assertion of jurisdiction over a foreign company. 19 A.L.R. 31, Products Liability—Jurisdiction.

In Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, decided the year after *McGee* (1958), the court admonished of the limits upon a state's power to exercise personal jurisdiction over a nonresident. A Delaware resident established a trust in Delaware and named a Delaware trustee. The settlor then moved to Florida, executed a will and died. When the will was probated in Florida questions concerning the trust arose and Florida attempted to exercise personal jurisdiction over the Delaware trustee. The Supreme Court ruled that such exercise of jurisdiction violated due process and warned that factors such as convenience of the parties, and "center of gravity" of the controversy, which are relevant in determining whether the exercise of jurisdiction violates due process, become irrelevant if no basis exists for jurisdiction. In concluding the court pointed out that jurisdiction is a power concept with territorial limitations and that a defendant must have the necessary mini-

mal contact before being subjected to a state's jurisdiction. Consequently, if the nonresident has never had the requisite "minimal contacts", with the state in its territorial sense there is no basis for jurisdiction.[4] In *Hanson*, the court stated, "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." In determining that necessary "contact" was absent the court observed, "the cause of action in this case is not one that arises out of an act done or a transaction consummated in the forum State."

With the *International Shoe* rule subjecting foreign residents to a state jurisdiction on the basis of "minimal contacts" and *McGee* holding that a single transaction may be a constitutional'y significant contact to come within the rule, the Supreme Court announced the principles with which to analyze the extent of a state's jurisdictional reach. In Hanson v. Denckla, supra, the court made certain comments concerning the limitations of a state's jurisdictional reach. It would seem that if the facts of this case are not within the confines promulgated in *Hanson* the principles of *International Shoe* and *McGee* confer jurisdiction. However, the application of these principles to particular factual situations, including the one presented in the case at bar, has not been made by the United States Supreme Court. Consequently this court seeks guidance from other courts faced with this or similar factual situations.

The Supreme Court of Arizona (in Phillips v. Anchor Hocking Glass Corp., 100 Ariz. 251, 413 P.2d 732, 19 A.L.R.3d 1 (1966)) and the Illinois Supreme Court (in Gray v. American Radiator & Standard Sanitary Company, 22 Ill.2d 432, 176 N.E.2d 761 (1961)), considered factual situations substantially the same as the one here. In both cases the presence within the forum state of one of defendant's allegedly defective products which caused tortious injury was found to be sufficient constitutional contact with the forum to sustain its exercise of personal jurisdiction over a nonresident defendant who was without other contacts. The United States Supreme Court has not commented on these cases or, apparently, upon cases involving similar facts.

The exercise of jurisdiction in *Phillips* and *Gray* would seem to be within the perimeter of constitutional limitations imposed by the Due Process Clause under the principles of *McGee* and *International Shoe*, unless the limitations discussed in Hanson v. Denckla, supra, preclude such an extension of jurisdictional power. The court in *Hanson* said that the application of the "minimal contact" rule will vary with the nature and quality of the defendant's activity, but that it is essential in each case "that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." This language should pose no obstacle to exercise of jurisdiction over a nonresident who enters a contract with a resident of the forum; if the "minimal contacts" between the contract and the forum are present, the nonresident will, of course, have purposefully availed himself of the privilege of conducting activities within the forum state. That language was also particularly appropriate in *Hanson* where the "cause of action * * * was not one that arises out of an act done or transaction consummated" in the forum, but the only contact was the unilateral activity of persons claiming some relationship with the nonresident defendant. Thus the facts of that case demanded the con-

---

4. Those restrictions (upon personal jurisdiction) are more than a guarantee from inconvenience of distant litigation. They are a consequence of territorial limitations on the power of the respective states. However, minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has the "minimal contacts" with a state that are a prerequisite to its exercise of power over her. Hanson v. Denckla, supra.

clusion reached. But in *Hanson* the court was not addressing itself to a products liability situation; nevertheless, the language in question, when applied to such a case causes a great deal of difficulty.

In Phillips v. Anchor Hocking Glass Corp., the Arizona court concluded that language was not to be read literally in a products liability case. Pertinent portions of that decision follow:[6]

> The statement has caused state courts some concern which is discussed below. We do not think the quoted language can be construed literally. To do so is to revitalize the 'implied consent' theory emasculated by the International Shoe case and to reverse the trend expanding state jurisdiction over nonresidents which trend was recognized in the Hanson decision. To make the requirement of purposeful activity within the state a necessary prerequisite to personal jurisdiction in all cases undermines the notion that the facts of each case must be examined to decide whether it is fair to exercise jurisdiction over the defendant. Furthermore, it is apparent that all personal jurisdiction questions cannot be determined by asking whether the defendant purposefully conducted activities within the forum state to obtain the benefits and protections of its laws. Tortious and negligent acts are obvious examples in which it is unrealistic to say that the actors first considered the laws of the state in which such acts were committed. A rule limiting jurisdiction to defendants who 'purposefully' conduct activities within the state cannot properly be applied in product liability cases in view of the fortuitous route by which products enter any particular state. Cummins, In Personam Jurisdiction Over Nonresident Manu-

facturers in Product Liability Actions, 63 Mich.L.R. 1028.

A fair reading of the Hanson decision leads us to the conclusion that the Supreme Court is concerned about our federalism. State boundaries may be as easily erased by the enhancement of state power as by the expansion of national authority. Kurland, supra; Sobeloff, Jurisdiction of State Courts over Non-Residents in our Federal System, 43 Cornell L.Q. 196; Stimson, Omnibus Statutes Designed to Secure Jurisdiction Over Out-of-State Defendants, 48 A.B.A.J. 725. See also *Products Liability—Jurisdiction,* 19 A.LR. at pages 28 and 29.

Although the Supreme Court sustained jurisdiction in *McGee* on the basis of a single contract, the contract in question was one of insurance and the court noted that the State had a special interest in the regulation of the insurance industry. Defendant urges that insurance cases occupy a special, separate category and that only an insurance contract can provide a "single transaction" basis for jurisdiction. While it is true that *McGee* upheld jurisdiction upon a "single contact" involving an insurance contract and the Supreme Court has not passed upon a single transaction situation involving a tort or a contract other than insurance, there seems to be little doubt that it would find that either, as a matter of due process, constituted a sufficient "contact" to subject a nonresident to the jurisdiction of a state court.

█ The first reason that induces this court to conclude that personal jurisdiction may be acquired over one who has caused an event to occur out of which the claim of tortious injury arose is the activity of the Supreme Court itself. In the *McGee* opinion, in footnote number two, the court cited with approval

6. The A.L.R. annotation comments on Hanson: "But the courts have been concerned about the language of Hanson * * * and have felt constrained to require that the presence of the defendant's product in the jurisdiction must have been a foreseeable event. Apparently, foreseeability is supposed to satisfy the 'purposeful activity' language of Hanson." This seems to be a play on semantics rather than a change of requisites.

Smythe v. Twin State Improvement Corp., 116 Vt. 569, 80 A.2d 664, 25 A.L.R.2d 1193 in which the Vermont Supreme Court held that a Vermont statute permitting personal jurisdiction over a nonresident defendant who committed a tort in Vermont did not violate the due process clause of the Fourteenth Amendment. Moreover, the most recent case in this area, Rosenblatt v. American Cynamid Co., 86 S.Ct. 1, 15 L.Ed.2d 39 (1965), indicated that court would go along with the current trend. In *Rosenblatt* jurisdiction was obtained in Italy over defendant under a New York statute authorizing in personam jurisdiction over absent nonresidents on the basis of tortious conduct in the forum. In a one-judge opinion, Mr. Justice Goldberg ruled that the court would not stay the New York proceeding because the defendant's argument that New York's exercise of jurisdiction violated due process was "unsubstantial". In his opinion the Justice stated:

I have concluded, however, that appellant's constitutional argument is insubstantial, and that a stay would therefore be unwarranted. The logic of this Court's decisions in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, [161 A.L.R. 1057], and McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, supports the validity of state "long arm" statutes such as the one involved here which base in personam jurisdiction upon commission of a 'tortious act' in the forum State. Since those decisions a large number of States have enacted statutes similar to the one here. In cases under these statutes in state and federal courts, jurisdiction on the basis of a single tort has been uniformly upheld:

"Indeed, the constitutionality of this assertion of jurisdiction, today, could only be doubted by those determined to oppose the clear trend of the decisions. This situation is exactly that of the nonresident-motorist statutes, which were long ago upheld, except that the highways are not directly involved. It is now clear, if it was ever in doubt, that the nonresident-motorist cases were not really based on 'consent' but on the interest of the forum State and the fairness of trial there to the defendant." Currie, The Growth of the Long Arm, 1963 U.Ill.Law Forum 515, 540.

In this circuit the Court of Appeals seems to have reached the position that personal jurisdiction may be exercised over a nonresident defendant who has committed a tort in the forum. In Erlanger Mills, Inc. v. Cohoes Fibre Mills, 239 F.2d 502 (4th Cir. 1956) [7] the court found the minimum contacts necessary for jurisdiction over a foreign corporation wanting. Defendant Cohoes was a New York corporation which shipped a quantity of defective yarn to a North Carolina concern. Defendant had never done business in North Carolina and the single transaction out of which the suit arose was consummated in New York. The Fourth Circuit ruled that defendant's contacts with North Carolina were insufficient to subject it to that state's jurisdiction. In Moore-McCormack Lines, Inc. v. Bunge Corporation, 307 F.2d 910 (4th Cir. 1962) noted again that the "mere delivery of goods within a state" is "an insufficient basis for substituted service of process", citing as authority for that proposition *Erlinger Mills*, supra. The court then cited Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961) distinguishing the principle for which it stands from the authority of *Erlanger Mills*.

Gray v. American Radiator and Standard Sanitary Corp., supra, stands for the proposition that when a foreign manufacturer allows his wares to come into the forum state and his product causes injury, the foreign manufacturer is amenable to the forum's juris-

---

7. It should be noted that this case was decided prior to McGee and Rosenblatt.

diction. In *Gray* the only contact of the manufacturer with Illinois, the forum, was the occurrence of the injury there. The manufacturer produced the defective valve outside Illinois, sold it outside Illinois, and the purchaser installed in a radiator outside Illinois. The radiator was then shipped to an Illinois concern and the defective valve exploded and injured the plaintiff in Illinois. The Supreme Court of Illinois ruled that it could, consistently with due process, subject to its jurisdiction one who caused tortious injury within the State. Thus, it appears that the Fourth Circuit's position is that while the mere delivery of one's product in a state is insufficient contact to render the seller amenable to that state's jurisdiction, if the delivery is accompanied by something more, to wit, tortious injury caused by the product, then the manufacturer is subject to the state's jurisdiction.[8] This conclusion is further buttressed with the following observation by Judge Sobeloff made in Gkiafis v. Steamship Yiosonas, 342 F.2d 546 (4th Cir. 1965): "By now it is certainly beyond question that an otherwise insignificant contact with a state may prove constitutionally sufficient if it gave to the cause of action involved in the particular suit." The state's interest in protecting its citizens and those within its borders from negligent injury was cited as a reason which would justify the exercise of jurisdiction over a matter arising from negligence within its borders.

In conclusion, the court finds the presence of those minimal contacts necessary to constitutionally subject defendant to the reach of South Carolina's jurisdiction. Moreover, it does not appear that requiring defendant to defend in South Carolina be unfair to defendant, cause undue hardship upon it or otherwise offend any "traditional notions of fair play and substantial justice." Ac-

cordingly, the exercise of jurisdiction in the instant case does not offend the Due Process Clause of the Fourteenth Amendment.

The motion of defendant Q. H. S., Inc., is denied.

---

8. See 43 Cornell L.R. 206, paper by Judge Sobeloff. Therein he pointed out that while the contacts in Erlanger were insufficient to sustain N.C.'s exercise of personal jurisdiction over the N.Y. de-

fendant, the N.C. corporation had the necessary contacts with N.Y. to sustain that state's jurisdiction over the N.C. concern.